UNITED STATES

v.

**Mark F. HAYES, 469 66 7438, Corporal (E–4), U.S. Marine Corps.**

**NMCM 82 0981.**

U. S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 27 June 1981.

Decided 18 Jan. 1983.

MAJ Joseph M. Poirier, USMC, Appellate Defense Counsel.

LCDR R. Clayton Seaman, Jr., JAGC, USN, Appellate Government Counsel.

Before ABERNATHY, Senior Judge, and BARR and MALONE, JJ.

BARR, Judge:

Appellant was convicted, contrary to his pleas, by a special court-martial composed of members of a one-day unauthorized absence and the larceny of assorted automobile parts valued at $654.00, in violation of Articles 86 and 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 886 and 921, respectively. His sentence to confinement for three months, forfeiture of $300.00 pay per month for a period of three months, reduction to pay grade E–1 and a bad-conduct discharge was approved, without modification, on review below.

Appellant now assigns four errors for our consideration. Because of our disposition of the first assignment, we need not reach the merits of the remaining issues.

## I

### THE APPELLANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO CONFRONT AND FULLY CROSS-EXAMINE A KEY GOVERNMENT WITNESS.

We set forth the facts essential to an understanding of the issue thus framed and to be resolved. The date of the alleged larceny was 27 September 1980. But for the evidence offered through the testimony of one witness, Mrs. H., the Government's case on the larceny offense rested wholly on circumstantial evidence, and the permissible inferences derived therefrom, that on 20 October appellant's car, upon its seizure, was found to be equipped with one of the items alleged to have been stolen on 27 September, and that appellant *thereafter* took certain actions to dispose of, and disassociate himself from, the remaining parts. Certain statements of appellant, purportedly made subsequent to 20 October, and subject to variant interpretations as to their tendency to inculpate or exculpate appellant of the larceny, completed the circumstantial evidence offered.

The only direct nexus between appellant and the stolen goods contemporaneous to the date of the theft was provided by the testimony of Mrs. H. She testified on direct examination that at appellant's home on the evening of, but prior to the hour of, the larceny, her husband (PVT H.), CPL D., and appellant discussed, in her presence, plans to steal automobile parts on the base at Officer Candidates School (OCS). Having departed in company, the three were next seen by Mrs. H. four hours later (approximately midnight) "unloading" car parts into a closet in appellant's house. She identified many of these parts as similar to those reported as stolen that evening from the hobby shop parking area of OCS. Mrs. H. also testified that appellant at this time admitted that the parts in fact had been

stolen from the aforementioned location. Mrs. H. next saw the parts a day or so later when, according to her testimony, she and her husband joined appellant and his wife in the latter's home where they viewed, and discussed the use and value of, the stolen parts. The next critical aspect of her testimony concerned a chance meeting at the automobile hobby shop in early October with the victim of the 27 September larceny. Mrs. H. reported appellant as stating, as he departed the shop, "That's the guy who owns the Duster we stole the parts from." On a later date, around 10 October, appellant, according to Mrs. H., delivered the stolen parts to her home with the explanation that the Naval Investigation Service (NIS) was looking for them and he had to get them out of his apartment. On 20 October, NIS seized from appellant's car a set of "wheelie bars" identified as being among the items stolen on 27 September. Because Mrs. H.'s husband was in possession of the car at that moment, their apartment was searched by NIS, with negative results. According to Mrs. H., later that evening appellant and her husband conceived a plan to create a "fake alibi" which would show they legally came into possession of the stolen items.

That the evidence provided by Mrs. H. was extremely damaging to appellant's case, and especially to his defense of innocent possession, is self-evident. The circumstantial evidence previously alluded to, when bolstered by the testimony of Mrs. H., presented a very strong case for conviction of appellant *only* if Mrs. H.'s testimony was believed. The material parts of her testimony were contradicted by virtually every other witness at the trial, leaving her rendition of the events wholly uncorroborated.

To counter her testimony further, the defense attempted on cross-examination to attack her credibility via two distinct, though factually interrelated, avenues. First, because she admitted involvement in an adulterous relationship, an offense exhibiting moral turpitude, her credibility thereby was diminished. The second prong of attack was intended to disclose the moti-

vation of Mrs. H. to falsely accuse, and testify untruthfully against, appellant because of the bias which she harbored against him. The evidence of bias would have revealed[1] that Mrs. H.'s adulterous relationship was unknown to her husband *until* the latter part of October when disclosed to him by appellant, that as a result PVT H. physically abused her, that Mrs. H. was aware that appellant was in possession of certain pictures which showed her in a compromising position with her lover, that Mrs. H. harbored ill-will toward appellant because of his revelations to her husband and the consequences they produced, and, that, in the immediate aftermath of these events, Mrs. H. provided a statement to NIS implicating appellant in the larceny of 27 September.

The defense had elicited from Mrs. H. the threshold fact that she was committing adultery. When asked by the defense counsel whether her husband knew this fact, she replied that she did not know and immediately broke into tears. Further questioning was interrupted by the military judge, who called for an Article 39(a), UCMJ, 10 U.S.C. § 839(a), session. In response to the judge's inquiry concerning what the defense intended to establish by continued questioning on this issue, the defense counsel stated his expectation that the evidence would demonstrate Mrs. H.'s unworthiness of belief because of her willful commission of a crime of moral turpitude (adultery) and her motive to misrepresent the truth arising from appellant's disclosure of her extramarital activities. Notwithstanding this exposition of intention, the military judge made clear that he would permit no further cross-examination of Mrs. H. on the issue of adultery as an offense of moral turpitude in relation to the question of witness credibility. He furthermore precluded trial defense counsel from tendering to the court an offer of proof of the expected testimony which would have been relevant to the bias prong of the cross-examination, and thereafter denied a defense motion to strike Mrs. H.'s direct testimony. The opportunity to elicit from Mrs. H. evidence of her bias and

motive thus having been curtailed by the rulings of the military judge, the remainder of the cross-examination concerned the factual assertions of her testimony.

Appellant now contends that his right of confrontation and cross-examination under the Sixth Amendment to the U.S. Constitution was denied by the decision of the military judge. While appellant's position is undoubtedly fortified by the referenced constitutional clause, we need not reach the constitutional issue.

After reading the explanation of the military judge for his rulings of preclusion and denial, we are unable to say to what extent, if any, his decisions were the product of sympathy for the tearful Mrs. H. or his being swayed by the argument of trial counsel that further questioning would be unduly abusive to Mrs. H. We are, however, convinced that the military judge was so consumed by the issue of whether adultery was a crime affecting moral turpitude that he failed to grasp the overriding basis for which continued questioning of Mrs. H. was warranted—evidence of her motive to misrepresent the truth stemming from her bias against appellant. Though trial defense counsel attempted to signal this aspect of his cross-examination attack on Mrs. H.'s credibility, it is clear beyond cavil that the military judge's rulings denying further impeachment examination of Mrs. H., precluding the making of a complete offer of proof, and denying the motion to strike were predicated solely on the belief that the issue of adultery as an offense of moral turpitude and its effect on the question of credibility had been sufficiently explored. That the bias and motive element of the expected evidence was not perceived by the military judge is clear, not only from the stated reasons given for his rulings, but also from the omission from the instructions on findings of any tailored reference to either factor as a matter to be weighed by the fact finders in judging the credibility of Mrs. H.

Without stating the multifarious purposes for which it exists, we well recognize the importance of cross-examination as a

---

1. An Article 38, UCMJ, 10 U.S.C. § 838, brief filed by the trial defense counsel sets forth the areas of inquiry which were sought to be developed on this issue by the defense.

means of exposing falsehood, error, and weakness in the testimony of a witness. This does not mean that cross-examination is an unlimited license to expose for exposure's sake. Thus, though the scope of permissible cross-examination extends to the subject of the direct examination and matters affecting credibility of the witness, Mil.R.Evid. 611(b), the military judge possesses the power, and hence must assume the responsibility, to control such examination within legitimate boundaries. One recognized boundary is to protect a witness from harassment or *undue* embarrassment. Mil. R.Evid. 611(a). In seeking a perspective from which to judge appellant's claim that he was denied his right to cross-examine Mrs. H. concerning matters affecting her credibility, we need first consider the right of a witness to be so protected.

 This right does not extend to *any* embarrassment, but only to that which is *undue.* Questions asked with the intent of belittling the witness or subjecting him or her to public ridicule are clearly prohibited because they are probative of no valid issue before the court. However, questions which legitimately probe the credibility of a witness are not prohibited merely because they would also call for a response embarrassing or humiliating to the witness. The function of the military judge is to draw the fine distinction between vigorous, but permissible, cross-examination and the abuse, by intimidation or unnecessary humiliation, of a witness. *See* ABA Standards Relating to the Function of the Trial Judge, 5.4(a). Though not exhaustive in definition, permissible cross-examination would include questions which are clearly allowable by another rule of evidence and not prohibited by one of the "balancing" rules, such as Mil.R.Evid. 403 or 611(a). Mil.R.Evid. 608(c), specifically provides that a witness may be cross-examined, for purposes of impeachment, as to his or her bias, prejudice, or any motive to misrepresent. As noted above, inquiry into these avenues affecting the credibility of Mrs. H. as a witness was the thrust of the defense case. Though the responses to the proposed cross-examination may have resulted in embar-

rassment to Mrs. H., the questions were highly relevant to her credibility and so probative of her bias and motive as to outweigh any potential danger arising from the "six evils" delineated in Mil.R.Evid. 403. We are confident that had the military judge permitted the offer of proof to be developed on the record, he too would have weighed the balance in favor of permitting the complete evidence of Mrs. H.'s bias and motive to be placed before the triers of fact. His rulings not only precluded him from appreciating the legal, as well as factual, significance of the defense attack on Mrs. H.'s credibility, but also effectively removed, as a matter of any consideration by the members, the only evidence which would have called into question the motive of Mrs. H. to misrepresent the truth in her testimony against appellant.

 A ruling by a military judge which excludes evidence will not be the predicate for error unless it materially prejudices a substantial right of the accused *and* the substance of the evidence was proffered to the military judge by offer of proof. Mil. R.Evid. 403. If, as we believe to be the law, the *responsibility* to preserve an evidentiary issue by offer of proof lies solely with an accused and his counsel, then, *a fortiori,* there must exist, as a necessary corollary, the *right* to so preserve. We do not hereby intimate or conclude that *any* abridgment of this right to preserve by offer of proof will necessarily result in prejudicial error. We have, however, no hesitation in finding, under the facts presented in the case *sub judice,* that its denial, which deprived the military judge of the foundation necessary to rendering a correct decision on the latitude to be afforded the defense in developing evidence of Mrs. H.'s bias and motive, was materially prejudicial to appellant's substantial right to a fair trial. Mrs. H.'s testimony provided the only direct evidence to support the contention that appellant was the actual perpetrator of the larceny of 27 September. We believe the finders of fact would have found her testimony, and hence the Government's evidence of larceny, less persuasive had it been viewed with that degree of circumspection which necessarily follows from being ex-

posed to a witness's bias, prejudice, and motive to misrepresent. Had her testimony been stricken, as requested by counsel for appellant, we are not confident that the entirely circumstantial evidence remaining, in light of appellant's defense that his possession of the parts, at its inception, was innocent, would have been sufficient to convince the court of appellant's guilt of larceny beyond a reasonable doubt. When we evaluate the evidence in the absence of Mrs. H.'s testimony, we are not so convinced.

The finding of guilty to the charge of larceny and so much of the sentence as is in excess of no punishment is set aside. A rehearing may be ordered. If it is determined that a rehearing is impracticable, the conviction for a one-day unauthorized absence may stand and a sentence to no punishment approved. All rights, privileges, and property of which appellant has been deprived by virtue of the finding of guilty and that portion of the sentence so set aside will be restored.

Senior Judge ABERNATHY and Judge MALONE concur.