**UNITED STATES, Appellee,**

v.

**Kyle F. COUSINS, Senior Airman
U.S. Air Force, Appellant.**

**No. 66,972.
ACM 28457.**

U.S. Court of Military Appeals.

Argued Feb. 10, 1992.

Decided Aug. 28, 1992.

For Appellant: *Captain David D. Jivi-den* (argued); *Colonel Jeffrey R. Owens* (on brief).

For Appellee: *Major Paul H. Blackwell, Jr.* (argued); *Lieutenant Colonel Brenda J. Hollis* (on brief).

*Opinion of the Court*

GIERKE, Judge:

A general court-martial composed of officer members convicted appellant, contrary to his pleas, of one specification of using cocaine, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. The approved sentence provides for a bad-conduct discharge, confinement for 1 year, total forfeitures, and reduction to airman basic. The Court of Military Review affirmed the findings but approved only so much of the sentence as provides

for a bad-conduct discharge, confinement and total forfeitures for 8 months, and reduction to airman basic, in an unpublished opinion dated June 17, 1991.

We granted review of the following issue:

WHETHER THE MILITARY JUDGE ERRED TO THE PREJUDICE OF APPELLANT BY INSTRUCTING THE MEMBERS THAT THEY COULD CONSIDER EVIDENCE OF UNCHARGED MISCONDUCT FOR "BACKGROUND INFORMATION" DURING DELIBERATIONS ON FINDINGS, AND WHERE HE FAILED TO GIVE THE MEMBERS AN INSTRUCTION LIMITING THE USE OF THE UNCHARGED MISCONDUCT FOR SENTENCING.

Appellant was charged with using cocaine between July 28 and 31, 1989, based on a positive urinalysis. He contends that the military judge erred by permitting a government witness, Airman Mark Vith, to testify that appellant used methamphetamines nine to eleven times prior to the offense charged. We hold that the military judge committed plain error, and we reverse.

After entering pleas of not guilty, but before either side introduced any evidence, the defense made a general motion *in limine*, stating "that at some point the Government may try to render some uncharged misconduct against Airman Cousins." Trial counsel responded that he "would only bring in areas of uncharged misconduct if the door was opened by the accused testifying himself." The military judge deferred ruling on the motion *in limine* but cautioned defense counsel that, "if you open any doors, what would otherwise be inadmissible could very well become admissible." The military judge concluded the discussion by inviting defense counsel to "[f]eel free to renew the motion later on."

The court-martial then recessed. When it reconvened approximately 2 weeks later with a new military judge and new trial counsel, the new military judge asked if "either side desire[d] that [he] rule on the admissibility of any evidence," and he received a negative response from both counsel. He then asked the defense if they had any motions and received a negative response.

After the prosecution presented the urinalysis evidence, including the testimony of a toxicologist, Dr. Wade, the court-martial recessed again. During the recess, trial defense counsel learned that Airman Mark Vith would testify for the prosecution. Airman Vith's expected testimony apparently caused concern because, when the trial resumed, trial defense counsel requested a bench trial on the ground that the defense was unaware that Airman Vith would testify for the prosecution when they elected trial by an all-officer panel. The military judge denied the request as untimely.

The trial resumed and Dr. Wade was recalled for cross-examination. He testified that cocaine is "very soluble in alcohol" and that a person whose alcoholic drink was spiked with cocaine would "probably not" notice it by looking at the drink; but the person would experience some effects from the cocaine, *i.e.*, "light-headedness, ... numbness of the mouth and tongue," and faintness.

Airman Mark Vith testified under a grant of immunity. He was pending trial for use of marijuana and had participated in an OSI [1]—controlled purchase of marijuana and methamphetamine from Sherry Sigmon.[2] He testified that on the afternoon of July 29, he and Airman Wilson went to Sherry Sigmon's house. Appellant was already there with Ms. Sigmon. Airman Vith testified that he visited Ms. Sigmon "whenever we wanted any narcotics." Asked what kinds of substances Ms. Sigmon provided, Airman Vith answered, "Basically marijuana. You could get meth. You could get acid [lysergic acid diethyla-

1. Air Force Office of Special Investigations.

2. *See United States v. Vith*, 34 MJ 277 (CMA 1992).

mide (LSD)]. And I guess you could get coke."

Airman Vith testified that, after some small talk about appellant's hand injury and "the dorm shakedown" that had occurred earlier that day, he, Airman Wilson, and Ms. Sigmon went "to the house where she usually went," and she purchased marijuana. When she returned with the marijuana, she announced that "she got coke and meth for free; a quarter gram." As Vith and Wilson were "rolling a joint," Ms. Sigmon "started cutting a line which she then gave to" appellant. Trial counsel pursued this subject by questioning as follows:

Q. A line of what?
A. We don't know.
Q. What did it look like?
A. Like a line. It looked like a mountain range; it was so big. I don't know. I couldn't tell what it was. All I know is—
Q. What did you think it was?
A. I thought it was meth.
Q. Why did you think it was methamphetamine?
A. Because that is all I ever seen him use.
Q. You say that is all you've ever seen him use?
A. Yes.
Q. You've seen him use it on prior occasions?
A. Yes, I have.
Q. How many times?
A. I would say about nine to eleven times.
Q. When you are talking about observing him, who are you talking about?
A. What?
Q. When you say you've observed him nine to eleven times—
A. I'm talking about Senior Airman Cousins.

The defense theory of the case was that appellant did not use any drugs at Ms. Sigmon's house but that he later visited a friend named Elizabeth Gevedon, who gave him some liquor laced with cocaine to relieve the pain in his severely injured hand. Appellant did not testify but relied on the testimony of Ms. Gevedon to present his defense. She testified that she did not tell appellant about the cocaine because she knew that he was in the Air Force and was not allowed to use drugs. After appellant told Ms. Gevedon that he had tested positive on the urinalysis, she told him that she had put cocaine in his drink. Ms. Gevedon testified that appellant "was upset, very upset. He didn't understand why I would do such a thing."

Ms. Sigmon, called by the prosecution in rebuttal, testified that appellant came to her house on the morning of July 29. He left during the afternoon, because he objected to the presence of Airmen Vith and Wilson and the fact that they were using marijuana. She admitted obtaining marijuana for Vith and Wilson but denied receiving cocaine or methamphetamines. She denied giving appellant any drugs.

Trial counsel recalled Dr. Wade in rebuttal and, after eliciting a description of the effects of cocaine, asked him:

Sir, if a person is a methamphetamine abuser primarily, let's just say a person really likes methamphetamine, based on your knowledge of drug abuse and how drug abusers abuse drugs, is it fair to say that they would never use cocaine?

Dr. Wade replied:

Oh no. Methamphetamine acts much the same [as] cocaine does.... In fact, methamphetamine is called the "poor man's cocaine."

Trial counsel's argument on findings began with a review of the urinalysis evidence. He then shifted his focus to appellant:

What do you know about this man? Should you believe, as those urinalysis tests suggest and prove, that he used cocaine? And he used it knowingly, consciously and wrongfully too by the way. But should you believe that he ingested the substance cocaine? Should you rely on those urinalysis test results? Sure you should. Because now you know more about Airman Cousins.

Moving to the prosecution witnesses, trial counsel commented on Airman Vith's testimony:

Now members, this accused may very well have been using cocaine under the nose, right in front of Airman Vith and Airman Wilson, but we don't know that. He could have thought that what he had was methamphetamine because as you recall, Airman Vith said, "Well gee, I just assumed that was methamphetamine because he has done methamphetamine in front of me at least ten or eleven times before." Now that is what Airman Vith thought. But what Airman Vith thought doesn't matter; that is just background information. How you interpret that evidence is what matters. You are the court. You are speaking for the Air Force in this regard.

Turning to the expert testimony of Dr. Wade, trial counsel argued:

Members of the court, use your common sense, knowledge of the ways of the world. Mr. Wade told you that people who use methamphetamine are just a[s] likely to use cocaine because it has the same effects. Right? Didn't he say that methamphetamine was the "poor man's cocaine"? Right? It gives you the same high....

Trial counsel then turned his attention to the credibility of Elizabeth Gevedon:

She is testifying under a grant of immunity because, after all, she provided cocaine to this accused that day, or so she claims.... How convenient. How convenient it all is that she would just have this urge to do this for Airman Cousins two days before his urinalysis. How convenient. Knowledge of human nature and the ways of the world. This woman doesn't have a thing to lose.... Nothing is going to happen to her. She is not in the military. She has nothing to lose but she sure has a lot to do for her friend and tell you just how she slipped some cocaine into his drink.

Trial counsel then discussed the scientific evidence, arguing that appellant could not have ingested the cocaine without feeling its effects and that, if he ingested the quantity described by Elizabeth Gevedon, his urinalysis would have reflected a higher concentration of the cocaine metabolite.

In rebuttal argument trial counsel attacked the credibility of his own witness, Sherry Sigmon, arguing:

It is clear that she wants to help the accused. She was involved with him; she used to date him very seriously. She should have no credibility.

Trial counsel concluded his rebuttal argument by urging the members, "[W]hen you apply what you know about the world—you should convict him because he is guilty."

The military judge instructed the court members that, "if an accused believes he is using methamphetamines when, in fact, he is using cocaine, he could still be convicted of wrongful use of cocaine because he had knowledge adequate to establish wrongfulness." He further instructed, "If the accused was in fact ignorant of the fact that there was cocaine in his drink, then he cannot be found guilty of the offense of wrongful use of cocaine." Regarding Airman Vith's testimony, he instructed the court members as follows:

Evidence that the accused may have used methamphetamine before 29 July 1989 was presented to you as background information. You may not consider this evidence for any other purpose and you may not conclude from this evidence that the accused is a bad person or has criminal tendencies and that he, therefore, committed the offense charged.

Neither party objected to the instructions as given, nor did they request additional instructions.

The testimony at issue is Airman Vith's testimony that he had seen appellant use methamphetamines nine to eleven times previously. In order to resolve the granted issue, we must answer three questions: (1) Was Airman Vith's testimony admissible? (2) If not admissible, was the error in its admission cured by the military judge's instructions? and (3) If not cured by the instructions, was admission of Airman

Vith's testimony without defense objection "plain error"?

Admissibility of the evidence of uncharged misconduct is determined by a three-pronged test: (1) "Does the evidence reasonably support a finding by the court members that appellant committed prior crimes, wrongs, or acts?" (2) Does the evidence make a "fact ... of consequence ... more ... or less probable"? and (3) Is the "probative value" of the evidence "substantially outweighed by the danger of unfair prejudice"? If the evidence fails any of the three tests, it is inadmissible. Mil. R.Evid. 401–403, Manual for Courts–Martial, United States, 1984; *United States v. Reynolds*, 29 MJ 105, 109 (CMA 1989).

Starting with the first test, we are satisfied that Airman Vith's testimony would "reasonably support a finding" that appellant had previously used drugs. Airman Vith testified that he knew Ms. Sigmon could supply marijuana, LSD, methamphetamine, and maybe cocaine. He had made an OSI-controlled purchase of methamphetamine from Ms. Sigmon. Based on this testimony and Airman Vith's obvious and frequent association with known drug users, the court members could reasonably infer that he was able to recognize methamphetamine and that his testimony that appellant previously had used the methamphetamine in his presence was believable. We hold that Airman Vith's testimony passes the first test.

Turning to the second test, Airman Vith's testimony that appellant used methamphetamines 9–11 times previously did not make it more or less probable that Ms. Sigmon provided appellant with cocaine at her house on July 29. Accordingly, we hold that the evidence of appellant's prior drug use was irrelevant; therefore, it fails the second test. Mil.R.Evid. 401 and 402.

Since Airman's Vith's testimony regarding appellant's prior drug use did not meet the second test, it was inadmissible. Even if we were to find sufficient minimal relevance to satisfy the second test, the third test clearly was not met in this case, because its probative value was substantially outweighed by the danger of unfair prejudice. Mil.R.Evid. 403.

The Government argues that the military judge's instructions cured the error. The military judge told the court members that the evidence of prior drug use was "background information." Although he cautioned them not to conclude that appellant "is a bad person or has criminal tendencies," he did not define "background information" or tell the court members for what legitimate purpose they could consider the evidence. This lack of guidance left the evidence of uncharged misconduct in the posture of a "wild card," to be considered and used by the court members for undefined purposes. We hold that the instruction was inadequate to cure the error.

Finally, we turn to the question of plain error. The Government argues that the defense waived their objection to Airman Vith's testimony—Mil.R.Evid. 103(a)(1); appellant asserts that erroneous admission of the evidence of uncharged misconduct was not waived because its admission was plain error. Mil.R.Evid. 103(d). Although trial defense counsel did not make an objection at the time of Airman Vith's testimony, she had made a motion *in limine* at the beginning of the trial. After trial counsel represented that he would introduce evidence of uncharged misconduct only "if the door was opened by the accused testifying himself," the military judge deferred ruling on the motion.

Contrary to his predecessor's earlier representations, the second trial counsel offered Airman Vith's testimony in his case-in-chief. The second military judge never explicitly ruled on the motion. Trial defense counsel attempted to change the forum to a bench trial when she learned that Airman Vith would testify, but she did not renew her objection when Airman Vith actually testified. While she did not make the timely and specific objection contemplated by Mil.R.Evid. 103(a)(1), her actions fall short of acquiescence or a deliberate defense strategy. *See generally United*

*States v. Gamble,* 27 MJ 298, 306–07 (CMA 1988); *United States v. Thomas,* 11 MJ 388, 392 (CMA 1981).

The plain-error exception in Mil.R. Evid. 103(d) should "be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result." *United States v. Frady,* 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1692 n. 14, 71 L.Ed.2d 816 (1982); *United States v. Fisher,* 21 MJ 327, 328–29 (CMA 1986). In determining whether to apply the plain-error exception, "a reviewing court cannot properly evaluate a case except by viewing such a claim against the entire record." *United States v. Young,* 470 U.S. 1, 16, 105 S.Ct. 1038, 1046–47, 84 L.Ed.2d 1 (1985). The error must not only have "seriously affected 'substantial rights,'" it must also have "had an unfair prejudicial impact on the jury's deliberations." *Id.* at 17 n. 14, 105 S.Ct. at 1047 n. 14; *United States v. Fisher,* 21 MJ at 328.

After reviewing the entire record, we hold that admission of Airman Vith's testimony regarding appellant's prior drug use was plain error. Elizabeth Gevedon, an acknowledged cocaine user, supported the defense theory of innocent ingestion. The prosecution countered appellant's claim of innocent ingestion with the immunized testimony of two acknowledged drug users, Airmen Vith and Wilson. A prosecution rebuttal witness, Sherry Sigmon, a convicted drug supplier, supported the defense. In addition to Airman Vith's testimony about appellant's habitual abuse of methamphetamines, the court members were presented with Dr. Wade's testimony that methamphetamine is the "poor man's cocaine."

Trial counsel exhorted the court members to use their "knowledge of the ways of the world" and argued that "people who use methamphetamine are just a[s] likely to use cocaine." This argument exhorted the court members to use the evidence for the precise purpose prohibited by Mil. R.Evid. 404(b). Notwithstanding the military judge's caution that they should not conclude from this "background informa-

tion" about appellant's prior drug abuse "that the accused is a bad person or has criminal tendencies," the overwhelming impression left with the court members was that appellant was an habitual drug user, likely to use cocaine. Furthermore, in resolving appellant's claim of innocent ingestion, the court members were confronted with a close factual question: Was appellant the innocent victim of a well-meaning friend or was he part of a claque of drug users who were lying to protect one of their own? We conclude that painting appellant as an habitual drug user was likely to have "had an unfair prejudicial impact on the jury's deliberations." 470 U.S. at 17 n. 14, 105 S.Ct. at 1047 n. 14. Accordingly, we hold that prejudicial error occurred. Art. 59(a), UCMJ, 10 USC § 859(a).

The decision of the United States Air Force Court of Military Review is reversed. The findings of guilty and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Air Force. A rehearing may be ordered.

Chief Judge SULLIVAN and Judges COX and WISS concur.

CRAWFORD, Judge (dissenting):

The majority cites Mil.R.Evid. 401, 402, and 403, Manual for Courts–Martial, United States, 1984, and *United States v. Reynolds,* 29 MJ 105, 109 (CMA 1989), for the proposition that admissibility of uncharged misconduct is determined by applying a three-pronged test: (1) "Does the evidence reasonably support a finding by the court members that appellant committed prior crimes, wrongs, or acts?" (2) Does the evidence make a "fact ... of consequence ... more ... or less probable"? and (3) is the "probable value" of the evidence "substantially outweighed by the danger of unfair prejudice"?

The majority then "tests" Airman Vith's testimony against these three standards; finds it fails tests 2 and 3; refuses to apply waiver; and finds plain error. I respectfully disagree.

Beginning with voir dire, appellant raised the affirmative defense of innocent ingestion, thereby placing his state of mind at issue. In support of this defense two witnesses were called: One witness testified that appellant was upset when he saw other airmen using drugs; the other testified that she slipped cocaine into appellant's drink without his knowledge. The Government had the burden of proving that appellant knowingly used cocaine. Trial counsel used the testimony of Airman Vith to rebut the defense's innocent-ingestion theory by disclosing information making the likelihood of innocent ingestion "less probable."

Appellant was proved to frequent a known "drug" house where various controlled substances were used and sold. These substances included marijuana, methamphetamines, cocaine, and heroin. It is unquestionably relevant to the crime charged that appellant was seen "doing drugs" at this home on several prior occasions. The evidence of uncharged misconduct helps to shed light on the circumstances prior to appellant's positive urinalysis and to aid in determining the probability that appellant's drug use was *not* unknowing. For most people, the probability that appellant innocently ingested cocaine would dramatically decrease as his presence numerous times at a "drug house" became known. For these reasons, I believe Airman Vith's testimony passes test 2. I also believe Airman Vith's testimony passes test 3 because of its highly probative value with respect to the knowledge element of the crime. Therefore, I would hold Airman Vith's testimony was admissible under Mil.R.Evid. 401 and 402.

Mil.R.Evid. 404(b) provides an additional basis for admissibility of Airman Vith's testimony: rebutting the innocent ingestion theory raised by the defense and providing a background against which the jury can evaluate the charged offense. Under the Substantive Doctrine of Mil.R.Evid. 404(b), testimony is admissible if evidence of an act of uncharged misconduct is logically relevant to prove a fact in issue other than appellant's character and the prosecution's need for the evidence outweighs the evidence's prejudicial character. *United States v. Metz*, 34 MJ 349, 351 (CMA 1992).

Airman Vith testified that he had witnessed appellant using methamphetamines on nine to eleven occasions. This evidence of prior drug use cannot be admitted to prove appellant's bad character or to show that he acted in conformity therewith. As a rule of logical relevance, Mil.R.Evid. 404(b) requires that this testimony prove something other than appellant's proclivity to commit similar crimes. "It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Mil. R.Evid. 404(b). The list of reasons contained in the rule for admission of uncharged misconduct is not exhaustive. *United States v. Johnson*, 634 F.2d 735, 737 (4th Cir.1980), *cert. denied*, 451 U.S. 907, 101 S.Ct. 1974, 68 L.Ed.2d 295 (1981). An issue raised by the defense may be rebutted by evidence of uncharged misconduct. *United States v. DiCupe*, 21 MJ 440, 443–44 (CMA), *cert. denied*, 479 U.S. 826, 107 S.Ct. 101, 93 L.Ed.2d 52 (1986); *United States v. Janis*, 1 MJ 395 (CMA 1976); *see United States v. Johnson, supra.*

With respect to the innocent-ingestion theory, the Supreme Court in *Huddleston v. United States*, 485 U.S. 681, 688–90, 108 S.Ct. 1496, 1500–01, 99 L.Ed.2d 771 (1988), found evidence of the accused's prior involvement in a series of sales of stolen televisions and appliances to be relevant to a determination whether the accused knew he was selling stolen goods. In *United States v. DiCupe*, 21 MJ at 444, this Court found testimony of poor performance relevant to rebut the defense theory that appellant "performed his duties as night manager '[o]utstandingly well,'" and thus could not have been responsible for the theft charged. In *United States v. Johnson*, *supra* at 737, the Court of Appeals allowed evidence of disproportionately high client medical billings to rebut the defense theory that appellant was not the type of person to engage in tax evasion, stating, "[E]vi-

dence of 'other acts' may sometimes be critical to proof on a dispositive issue related to a defendant's state of mind."

In addition, uncharged misconduct is admissible as background evidence under Mil. R.Evid. 404(b). In *United States v. Brennan*, 798 F.2d 581, 589 (2d Cir.1986), a former New York Supreme Court judge was convicted of bribery, interstate travel in aid of racketeering, wire fraud, and attempted extortion. The court of Appeals allowed, as background evidence, three instances of judicial obstructions not charged in the indictment in order "to complete the story of the crimes charged." In *United States v. Williford*, 764 F.2d 1493, 1499 (11th Cir.1985), the Court of Appeals admitted testimony regarding negotiations of a cocaine sale against a defendant charged with importing large quantities of marijuana, stating:

> Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury.

Although I would hold Airman Vith's testimony admissible under Mil.R.Evid. 401, 402, and 404(b), I share the concern of the majority bout admitting unduly prejudicial evidence. The Supreme Court in *Huddleston v. United States, supra,* recognized that protections against unfair prejudice emanate from four evidentiary sources under the Federal Rules of Evidence: (1) the 404(b) requirement that "evidence be offered for a proper purpose"; (2) "the relevancy requirement of Rule 402"; (3) the trial court's assessment of the probative value and prejudicial impact of the evidence under Rule 403; and (4) the requirement for a trial court to give limiting instructions to the jury upon request under Rule 105. 485 U.S. at 691. Similar protections exist under the Military Rules of Evidence.

Reviewing application of these four evidentiary rules in this case, I am satisfied that: (1) the evidence was offered for a proper purpose—to refute appellant's claim of innocent ingestion could be evaluated; (2) the evidence was relevant to a determination of knowing ingestion; (3) the military judge properly assessed the probative value and prejudicial impact of the evidence; and (4) the military judge gave an effective limiting instruction to the jury. Therefore, I conclude that appellant was not unfairly prejudiced by admission of Airman Vith's testimony.

Additionally, I disagree with the majority's conclusion regarding plain error and its refusal to apply waiver under the facts of this case. This case is unique because, after an initial motions session at which the defense made a general *in limine* objection to Airman Vith's testimony, both the military judge and trial counsel were replaced. Hence, trial defense counsel was the only original court officer to participate in the entire trial. The first military judge properly had deferred ruling on the motion *in limine* until Airman Vith's testimony was offered as evidence at trial, and that judge had asked trial defense counsel to renew the motion at that time. When Airman Vith's testimony was offered by the new trial counsel, in front of the new military judge, trial defense counsel did not renew the motion *in limine* but rather asked for a change of forum to judge alone. I am, therefore, left with the unenviable task of evaluating trial defense counsel's decision, which could have been a tactical one, based solely on the record before us.

The majority's opinion seems to indicate that it will apply the doctrine of plain error any time a trial defense counsel fails to renew an objection to evidence of uncharged misconduct.

I believe this court's own case law runs contrary to this proposition. In *United States v. Holt*, 33 MJ 400, 406 (CMA 1991), we held that, absent plain error, failure to object to trial testimony waives the matter on appeal. *See also* RCM 920(f), Manual, *supra;* Mil.R.Evid. 103(a)(1). Earlier, in

*United States v. Thomas*, 11 MJ 388 (CMA 1981), this court did not find plain error where a judge deferred ruling on a defense motion *in limine* to suppress evidence of uncharged misconduct, and here the defense failed to renew its motion upon presentation of the evidence.

"In order to constitute plain error, the error must not only be obvious and substantial, it must also have 'had an unfair prejudicial impact on the jury's deliberations.'" *United States v. Fisher*, 21 MJ 327, 328 (CMA 1986) (quoting *United States v. Young*, 470 U.S. 1, 17 n. 14, 105 S.Ct. 1038, 1047 n. 14, 84 L.Ed.2d 1 (1985)). I would not apply plain error here because trial defense counsel requested a change of forum rather than renewing the objection, indicating a tactical· decision on her part, and because the military judge carefully and correctly instructed the members on the inferences they could draw from this testimony. I believe any possibility of unfair prejudice was alleviated by the limiting instruction.

Applying a harmless-error analysis to the facts in this case, I conclude that the other evidence of record is more than sufficient to support appellant's conviction. First, appellant tested positive for cocaine, and Airmen Vith and Wilson testified that they saw him using white, powdery "lines" of an unknown substance which was believed to be an illegal drug. Second, Airmen Vith and Wilson both testified that appellant remained at Sherry Sigmon's house while they went to buy drugs, indicating that appellant was comfortable in this home and well known to the owner. Finally, Elizabeth Gevedon's testimony that she put cocaine into appellant's drink as a means of easing pain in his hand lacks credibility when aspirin would have accomplished this objective legally and cheaply. There is sufficient proof of knowing use; hence I would find any error to be harmless.

The courts have also upheld decisions to admit evidence of uncharged misconduct absent an abuse of discretion—*see United States v. Shields*, 20 MJ 174, 176 (CMA 1985); *United States v. Wright*, 20 MJ 518, 521 (ACMR), *pet. denied*, 21 MJ 309 (1985); *United States v. Pooler*, 18 MJ 832, 833 (ACMR 1984), *pet. denied*, 19 MJ 317 (1985). In the instant case, the knowledge element of the offense was clearly placed in issue by the defense.

For all of the foregoing reasons, I would affirm the decision below.