UNITED STATES, Appellee

v.

Specialist Robert P. WILLIAMS, 393–68–3087, United States Army, Appellant.

ACMR 9201837.

U.S. Army Court of Military Review.

29 July 1993.

For Appellant: Colonel Malcolm H. Squires, Jr., JAGC, Captain Paul H. Turney, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Joseph A. Russelburg, JAGC, Major Joseph C. Swetnam, JAGC, Captain Robert J. Walters, JAGC (on brief).

Before WERNER, GRAVELLE, and JOHNSTON, Appellate Military Judges.

## OPINION OF THE COURT ON RECONSIDERATION

WERNER, Senior Judge:

Contrary to his pleas, the appellant was convicted by a military judge sitting as a special court-martial of disrespect to a superior noncommissioned officer and wrongful use of marijuana in violation of Articles 91 and 112a, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 891 and § 912a (1988). His approved sentence includes a bad-conduct discharge, confinement for two months, forfeiture of $500.00 pay per month for two months, and reduction to Private E1.

The appellant contends that the military judge committed prejudicial error by admitting evidence of uncharged misconduct, in the form of a record of a previous conviction by summary court-martial, to establish the appellant's guilt of wrongfully using marijuana.[1] The government counters that the evidence was admissible to show absence of mistake and knowledge under Military Rule of Evidence 404(b) [hereinafter Mil.R.Evid.] and to rebut the appellant's assertion that his use of marijuana was innocent.[2] Additionally, the government argues that even if the evidence was admitted erroneously, the error was harmless. We hold that the military judge erred in admitting the evidence and that, under the circumstances of this case, the error was prejudicial to the appellant.

### I.

As a result of a unit inspection conducted on 11 May 1992 pursuant to Mil.R.Evid. 313(b), during which a specimen of the appellant's urine was seized and later chemically analyzed for evidence of illicit drugs, the appellant was found to have ingested marijuana. The appellant did not contest the fact that his urine contained chemical evidence of marijuana. He did, however, challenge the inference that he had knowingly and wrongfully ingested the drug.

In his defense, the appellant called Mr. Frederick Baker, a civilian employed by the Army and an associate of the appellant. Baker testified that he frequently gave parties at his home and that the appellant attended two of them. At one of the parties held on 9 May 1992, Baker prepared four and one-half dozen brownies in which he had surreptitiously mixed about one and one-eighth ounces of marijuana leaves. When asked why he did this, Baker said, "Because it was a party, you know. It was something that I do and that I wanted to do, you know. It was my party. Like I say, I wasn't expecting no one from the military to come to the party." Baker remembered seeing the appellant eat some of the brownies. He believed that the appellant did not know they contained marijuana.

The defense also called Major Jacobs, a forensic toxicologist, who testified on direct examination that scientific studies conducted by the National Institute of Drug Abuse found that urinalyses of individuals who

---

1. The evidence admitted was a copy of a record of trial of a summary court-martial reflecting that, on 30 January 1992, the appellant was convicted of wrongful use of marijuana and was sentenced to restriction for one month, forfeiture of $881.20 for one month and reduction to E-4; and that on 29 February 1992, the convening authority approved the sentence. Included in the record were the summary court-martial rights notification and waiver statement in which the appellant consented to trial (DA Form 5111–R), the charge sheet (DD Form 458), and the record of trial itself (DD Form 2329).

2. Mil.R.Evid. 404(b) provides:

   Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

consumed a mixture of brownies and marijuana revealed positive readings for marijuana metabolites. On cross-examination, Major Jacobs compared the level of marijuana metabolites found in the urine specimen taken from the appellant on 11 May with his estimate of the level of marijuana metabolites that the appellant probably ingested from eating the brownies on 9 May. Without expressly saying so, Major Jacobs inferred that the appellant had consumed marijuana from sources other than the brownies.[3] But on redirect examination, Major Jacobs stated that any estimate of the level of marijuana metabolites ingested by the appellant was affected by several factors: metabolism, how much a person eats, how fast the marijuana metabolites are released into the system, and how quickly they are expelled from the urine—each of which differ by individual.[4] He concluded that, as he did not know the potency of the marijuana ingested or how much the appellant consumed, the appellant's positive urinalysis could have been the result of eating the brownies. On recross examination, the prosecution attempted, but was unable to establish that the level of marijuana metabolites in the appellant's urine exceeded what he had consumed by eating the brownies.

3. The following exchange transpired between the trial counsel and Major Jacobs:

Q. Okay. Now, you sat through the testimony of Mr. Baker as to how much marijuana was put into how much brownie mix. Okay. Were you able to determine, based on his testimony, as to what level or what amount of marijuana would have been in each one of those brownies, approximately?
A. I used the ounce and one-half and the four and one-half dozen brownies and came up with about .77 gram of plant material per brownie.
Q. Okay. And, again that amount of marijuana is less then (sic) the amount of marijuana that was in one of the quote/unquote test brownie used in the study, correct?
A. That is correct, that is less.
Q. Okay. So, the testimony of Mr. Baker and the defense's argument falls short on both of the amount of marijuana in the brownies and the nanogram level that would have been reached or would have been consistent with what's indicated in this study?
A. Indicated in this study and these numbers do not quite meet, that is correct.

After the defense presented its case, the government proffered the copy of the record of the appellant's summary court-martial conviction for wrongful use of marijuana which was admitted by the military judge.

## II.

■ In order to prove a charge of wrongful use of marijuana under Article 112a, UCMJ, the prosecution must establish beyond a reasonable doubt that the accused used marijuana during the period of time alleged in the specification and that such use was wrongful. *United States v. Harper*, 22 M.J. 157 (C.M.A.1986).

■ "Use" has been defined as the administration, ingestion or physical assimilation of drugs into one's body or system. This may occur by smoking, snuffing, eating, drinking, or injecting the drug. *Id.* at 160. "The mere presence of the drug or its constituent elements in the body has not been expressly held by [the Court of Military Appeals] to be a fact sufficient to show use of that drug. Instead, [the Court has] additionally relied on expert testimony that the chemical traces of the drug are not naturally produced by the body or any other substance except the drug in question.

4. Major Jacobs explained:

Marijuana and THC [tetrahydrocannabinol] and many of the products are primarily stored in fat cells. If a person were a chronic user the level would build up in those fat cells and in other studies that have been done those who are put in a confined situation to measure the release of THC have shown that their half life is greatly extended. In other words, the amount of time it takes for them to drop a half of their level is much longer. That is due to the fat cells releasing it over a period of time rather then (sic) it just flushing through the system once. Some of those half lifes have been over 100 hours or a period of three or four days. There is the other extreme where some individuals half life may have been as low as 12 hours. I don't know if anyone has identified exactly why people are different but it could have to do with their overall physical state, the amount of fluids they consume during that period of time, several things could be a factor.

The same principle applies to marihuana." *Id.* at 161 (citations omitted).

Wrongfulness in this context means the knowing use of marihuana without justification or authorization. In the absence of evidence to the contrary, the prosecution may meet this burden by reliance on a permissive inference of wrongfulness which has long been recognized by military law as flowing from proof of the predicate fact of use of a contraband drug.

*Id.* at 162 (citations omitted). The Court of Military Appeals has identified three different types of "knowledge" relative to the wrongfulness of use of drugs. These types of knowledge are: 1) where the accused is aware that the substance is a drug but is unaware of its illegality (ignorance of the law); 2) where the accused is unaware of the presence of the drug in another, lawful substance such as where a drug is secretively placed by another in the accused's drink (ignorance of fact); and 3) where the accused honestly believes that the substance is something innocuous when in fact it is a proscribed drug such as where the accused believes the white powder he places in his coffee is sugar when in fact it is a drug (mistake of fact). *United States v. Mance*, 26 M.J. 244 (C.M.A.), *cert. denied*, 488 U.S. 942, 109 S.Ct. 367, 102 L.Ed.2d 356 (1988). Only in the latter two situations will the lack of knowledge on the part of the accused as to the true nature of the substance trump the permissive inference of wrongfulness stemming from evidence that the accused used a proscribed drug. At that point, unless the prosecution introduces additional evidence to establish the wrongfulness of the accused's drug use, the accused must be found not guilty as a matter of law.

The defense, through the testimony of Mr. Baker and Major Jacobs, adequately raised the defense of innocent ingestion on an ignorance of fact theory. Recognizing this, the prosecution attempted to counter the defense's theory via the appellant's previous conviction for wrongful use of marijuana. For this attempt to obtain judicial approbation, the Court of Military Appeals has mandated that the proffered evidence meet three tests:

1. Does the evidence reasonably support a finding by the court members that appellant committed prior crimes, wrongs or acts?

2. Does the evidence make a 'fact ... of consequence ... more ... or less probable?'

3. Is the 'probative value' ... 'substantially outweighed by the danger of unfair prejudice'?

*United States v. Cousins*, 35 M.J. 70, 74 (C.M.A.1992), *citing* Mil.R.Evid. 401–403 and *United States v. Reynolds*, 29 M.J. 105, 109 (C.M.A.1989).

█ First, it is self-evident that the record of the appellant's conviction by summary court-martial reasonably supports a finding that the appellant previously used marijuana. Second, such evidence of prior wrongful use does not make it more probable that the appellant knew that the brownies were contaminated with the drug on 9 May. A fact finder may not infer that, because the appellant had used drugs on another occasion, he is guilty of the charged offense. *United States v. Trimper*, 28 M.J. 460, 468 (C.M.A.1989). In other words, the evidence is not relevant. *Cousins*, 35 M.J. at 74. Third, the limited probative value of the appellant's prior conviction is complemented by its potential to significantly prejudice the outcome of the proceedings. Evidence of a prior conviction carries an imprimatur of officiality that effectively brands the convicted individual as a bad person and implies that, since he has knowingly used drugs previously, he must have knowingly used them as charged. Even with a military judge sitting as the trier of fact, there is a danger of unfair prejudice that, on balance, outweighs the limited probative value of the appellant's conviction record. *See United States v. Gibson*, 11 M.J. 435, 437 (C.M.A. 1981). Since two of the three tests cited above were not met, we hold that the record of the appellant's previous conviction should not have been admitted.

▮ The government argues now, as it did at trial, that we should follow a long-standing principle of military decisional law holding that it is permissible to admit uncharged misconduct to rebut matters presented by the defense. We decline to apply the principle here. At trial, the prosecution cited *United States v. Gaeta*, 14 M.J. 383 (C.M.A.1983), decided under the Manual for Courts–Martial, United States, 1969 (Revised Edition), for the proposition that evidence of prior use of hashish was relevant to rebut an accused's defense that he was not a participant in a drug sale but a mere innocent bystander. *See also, United States v. Janis*, 1 M.J. 395 (C.M.A.1976). More recent decisions have noted that uncharged misconduct is admissible to rebut matters in defense. *Trimper*, 28 M.J. 460; *United States v. DiCupe*, 21 M.J. 440 (C.M.A.), *cert. denied*, 479 U.S. 826, 107 S.Ct. 101, 93 L.Ed.2d 52 (1986); *see also Cousins*, 35 M.J. at 76 (Crawford, J. dissenting) ("The list of reasons contained in the rule for admission of uncharged misconduct is not exhaustive. An issue raised by the defense may be rebutted by evidence of uncharged misconduct.") (citations omitted). Even where uncharged misconduct is proffered in rebuttal, it must still pass the three tests for admissibility set forth in Mil.R.Evid. 401–403. *Trimper*, 28 M.J. at 467, n. 4. As indicated above, that did not occur.

▮ With respect to the matter of harmless error, we are convinced from our examination of the record that the admission of the appellant's prior conviction seriously affected his substantial rights. The factual question in this case was close. The prosecution established that the appellant had ingested marijuana thereby making out a prima facie case of wrongfulness. Contrarily, the appellant met his burden of going forward by raising the defense of innocent ingestion. The government did not introduce any evidence other than the prior conviction to contradict the defense. The thrust of the government's evidence was that since the appellant had been convicted of wrongfully using drugs in the past, he should again be convicted of such wrongful use. Arguably, "[a] trial judge, as distinguished from a jury, must be presumed to have exercised the proper discretion in distinguishing between material and immaterial evidence introduced at the trial and to have based his decision only on the former, in the absence of a clear showing to the contrary by the appellant." *United States v. Montgomery*, 20 U.S.C.M.A. 35, 42 C.M.R. 227 (1970). Nevertheless, in the context of this case, the impact of that evidence, even on a military judge sitting as the trier of fact, was sufficient to have tipped the balance against the appellant. There was no apparent reason to disbelieve the testimony of Mr. Baker; and Major Jacobs' testimony supported the defense's hypothesis. We therefore conclude that the judge was influenced by the introduction of the prior conviction in arriving at his findings. Accordingly, reversal of the findings of guilty of the drug charge is warranted.

We have considered the remaining assignments of error, including those matters submitted by the appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982) and find them to be without merit.

The findings of guilty of Charge I and its Specification are set aside and, in the interest of judicial economy, that Charge and its Specification are dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted above and the entire record, the court affirms only so much of the sentence as provides for confinement for two months, forfeiture of $500.00 pay per month for two months and reduction to Private E1.

Judge GRAVELLE concurs.

JOHNSTON, Judge, concurring in part and dissenting in part:

I cannot agree with my brothers' analysis of the issues concerning Charge I and its Specification. Their convoluted reasoning is unsupported in law or fact.

First, we must determine the facts. Prosecution Exhibit 1, the stipulation of

fact and the Laboratory Analysis Report, clearly established that the appellant ingested marijuana between 12 April 1992 and 11 May 1992. It is important to note that the stipulation did *not* specify that marijuana was ingested only once during that thirty-day period.

At trial, on 18 August 1992, the appellant attempted to present the mistake of fact defense of innocent ingestion through the testimony of Mr. Frederick Baker, a "KP" who cleaned up kitchens on post for a civilian contractor. Mr. Baker testified that he baked marijuana into brownies and gave them to guests at four or five parties he had hosted earlier in the year. At first he claimed that he served the brownies at a party for seventy friends on 9 May 1992. Later in his testimony he corrected himself and admitted that the party for seventy guests was held in April. He also said that twenty-five or thirty persons attended a similar party on 9 May 1992. Although he was not sure who attended the parties, he claimed to remember that *the appellant was present at both parties where he served marijuana brownies.*

In regard to the party on 9 May 1992, Mr. Baker testified that he paid $150.00 for an ounce and one-half of marijuana. Rather than consuming any of the marijuana himself, he claimed that he baked four and one-half dozen brownies that contained the marijuana. He also claimed to remember seeing the appellant eating the brownies. Mr. Baker told three other people who attended the party, but not the appellant, that the brownies contained marijuana.

At first Mr. Baker testified that he did not know the appellant was in the military when he attended the party on 9 May 1992. Under cross-examination, however, he admitted that he had known the appellant for six months and was aware that he was in the military. Although Mr. Baker knew that the appellant was in the military, realized that the military periodically tested soldier's urine for evidence of marijuana use, and said he would do nothing to hurt the appellant, he did not tell him that the brownies contained marijuana.

The majority opinion says "[t]here was no *apparent reason to disbelieve* the testimony of Mr. Baker." (Emphasis added). I disagree. Witnesses are not presumed as a matter of law to tell the truth—they testify and have their credibility evaluated by the finder of fact. Although under the mandate of Article 66, UCMJ, we may weigh evidence, judge the credibility of witnesses, and determine controverted questions of fact, we are also required to recognize that the trial court saw and heard the witnesses. Apparently the military judge in this case found Mr. Baker's convenient recollection of key facts unreliable and incredible.

The appellant did not testify at trial. While his silence may not be held against him, in my view, additional evidence was necessary in this case to establish a *credible* mistake of fact defense. Mr. Baker's testimony, even if believed, did not account for possible marijuana use during other portions of the thirty-day period during which metabolites could be detected in urine. Furthermore, his testimony did *not* establish the unknowing nature of marijuana use at the party. If believed, Mr. Baker's testimony merely established that *he* did not tell the appellant about the marijuana in the brownies.

Next, we must address the law of the case at bar. In examining the question of admissibility of the prior summary court-martial where the appellant plead guilty to the wrongful use of marijuana, the majority opinion states that "[t]he thrust of the government's evidence was that since the appellant had been convicted of wrongfully using drugs in the past, he should again be convicted of such wrongful use." That view of the evidence is not supported in any way by the record of trial. No such argument was made in support of admissibility. The trial counsel offered the record of the summary court-martial "for the purpose of showing the absence of mistake and knowledge." The government's contention was that the appellant was not "an innocent bystander" at the party.

The issue that the defense attempted to raise in this case concerned the knowing use of marijuana. As the majority correct-

ly states, the prior conviction imposed after a plea of guilty to marijuana use does not, by itself, show that the appellant knew marijuana was in the brownies at the party on 9 May 1992. The majority opinion fails to acknowledge, however, that the prior conviction tends to show that the appellant had knowledge about the effects of marijuana.

On 30 January 1992, the appellant pleaded guilty at a summary court-martial to the knowing use of marijuana. Thus, I am satisfied that he knew of the effects of the drug. The appellant attended at least one other party in April where marijuana brownies were consumed. Mr. Baker testified that the brownies he made gave one a "buzz" (i.e. a drug-induced "high"). Consequently, the appellant *may* have realized that the brownies consumed at the April party were tainted. In addition, the knowledge of the effects of marijuana and the consumption of brownies in April *may* have put him on notice that the brownies at the party on 9 May 1992 were likely to be tainted. The appellant, therefore, may have realized without being told that the brownies he consumed on 9 May 1992 were "spiked" with a contraband substance. Thus, the prior conviction makes knowing consumption of the marijuana in the brownies, on 9 May 1992, more or less probable depending upon the weight given to it. In short, the conviction was relevant and probative. It was admissible.

In support of its proposition that the prior conviction was more prejudicial than probative, the majority relies upon *United States v. Cousins,* 35 M.J. 70 (C.M.A.1992). That case, however, dealt with plain error in a cocaine ingestion trial with members wherein the military judge allowed evidence of prior methamphetamine use to be admitted under a vague "background information" standard. *Cousins* actually involved two errors by the military judge: the information was neither relevant nor admissible under any of the categories of Mil.R.Evid. 404(b); and, the danger of unfair prejudice under Mil.R.Evid. 403 was substantial. The plain error standard in that case was applied because the evidence

"was likely to 'had have an unfair prejudicial impact on the jury's deliberations'." *Cousins,* 35 M.J. at 75.

This case, on the other hand, is a judge-alone trial by a very experienced and widely respected jurist. The disputed evidence concerning the prior marijuana use was arguably admissible and relevant under Mil.R.Evid. 404(b) for one aspect of knowledge. The law has recognized that the danger of unfair prejudice from disputed evidence is minimal when tried before a military judge sitting alone as a fact-finder. In my view the prior conviction was relevant, somewhat probative on the issue of knowledge, and not prejudicial under the circumstances present here when considered with all the other evidence concerning knowing ingestion. I see no reason to set aside the findings of guilty of Charge I and its Specification.