UNITED STATES, Appellee,

v.

Specialist Albert R. GEORGE,
051–62–5288, United States
Army, Appellant.

ACMR 9201664.

U.S. Army Court of Military Review.

15 July 1994.

For Appellant: Captain Don F. Pollack, JAGC (argued); Lieutenant Colonel James H. Weise, JAGC, Captain Lida A.S. Savonarola, JAGC, USAR, Captain Robert L. Carey, JAGC (on brief); Captain Robert H. Pope, JAGC.

For Appellee: Captain Louis E. Peraertz, JAGC (argued); Colonel Dayton M. Cramer, JAGC, Major James L. Pohl, JAGC, Major Joseph C. Swetnam, JAGC, Major Kenneth T. Grant, JAGC (on brief).

Before GRAVELLE, JOHNSTON, and BAKER, Appellate Military Judges.

OPINION OF THE COURT

PER CURIAM:

Contrary to his pleas, the appellant was convicted by a special court-martial consisting of officer and enlisted members of using cocaine in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a (1988) [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a bad-conduct discharge, forfeiture of $523.00 pay per month for three months, and reduction to Private E1.

This case was submitted to us asserting error in the military judge's "reasonable doubt" instruction, and asserting a violation of the "Assignments Clause" of the United States Constitution. We find that neither issue has merit. *Victor v. Nebraska,* —— U.S. ——, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994); *Weiss v. United States,* —— U.S. ——, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994);

*United States v. Gray,* 37 M.J. 730 (A.C.M.R. 1992).

After reviewing the record of trial, this court specified the following two issues:

WHETHER THE MILITARY JUDGE ABANDONED HIS IMPARTIALITY AND BECAME AN ADVOCATE FOR THE GOVERNMENT.

WHETHER THE MILITARY JUDGE ERRED TO THE MATERIAL PREJUDICE OF A SUBSTANTIAL RIGHT OF THE ACCUSED BY RESTRICTING THE SCOPE OF CROSS–EXAMINATION OF THE GOVERNMENT EXPERT WITNESS AND BY REFUSING TO ALLOW THE DEFENSE EXPERT WITNESS TO PRESENT OPINION TESTIMONY.

After reviewing the record and the briefs of appellate counsel and considering the oral arguments presented in this case, we need address only the second specified issue. We find that the military judge abused his discretion by being too restrictive in his rulings regarding the testimony of the expert witnesses in this case.

### I.

The appellant was charged with and convicted of one specification of using cocaine. The government's case was based solely on the results of a laboratory test of the appellant's urine. The government presented the testimony of Doctor Fretthold, who was accepted by the court as an expert in forensic toxicology. Doctor Fretthold explained the scientific methods used to detect the use of cocaine through identification of a metabolite of cocaine in a person's urine. He also testified concerning security and testing procedures used by the urine testing laboratory where he was employed.

On cross-examination, the defense counsel elicited from the government's expert witness that the expert had testified for the government in many courts-martial and ad-

ministrative separation boards for over a year; that his availability to testify was in conformity with a contract his company held with the government; that he testified only for the government; that the competitive-bid contract was based on satisfactory performance by the laboratory; that he was the laboratory supervisor; and, that he was the Vice President and a stockholder in the company. The expert witness also acknowledged that his company had made at least one error in initially reporting a test result as positive, which error was immediately caught at the laboratory; that the laboratory also erred in reporting a sample negative which was discovered upon a retest to be positive; and, that one Department of Defense report had been critical of the laboratory's confirmatory testing procedures.

However, when the defense counsel tried to elicit testimony regarding Doctor Fretthold's salary arrangements with the laboratory, the military judge cut him off. In a subsequent offer of proof, the defense counsel related that the expert witness made "over $121,000 per year from his duties which includes testifying in courts-martial and administrative separation boards" and that his "salary would increase by the profitability of the corporation through the next year, and a major amount of the corporation's profit is based on the contract they have with the United States Army to test for drugs."

■ The defense case focused on defects in procedures used by unit personnel in obtaining, securing, and safeguarding the urine of the appellant and other unit members. The defense case also focused on the relatively low level of benzoylecgonine, the metabolite of cocaine detected in the appellant's urine: 193 nanograms per milliliter of urine. The defense strategy was based in part on the defense of innocent ingestion.[1]

The defense presented the testimony of its own expert in forensic toxicology, Doctor

---

1. The military judge correctly instructed the members that an element of the offense of using cocaine was that the accused knew that he used cocaine. The defense of innocent ingestion (*i.e.,* ignorance of fact) attacks this element. *See generally United States v. Williams,* 37 M.J. 972,

974–75 (A.C.M.R.1993). The appellant did not testify on the merits. However, it is not necessary that an accused do so in order to raise the defense. *See, e.g., United States v. Cousins,* 35 M.J. 70, 72 (C.M.A.1992).

Manders, who had helped establish the military's urinalysis program. He testified that there were defects in the urinalysis testing procedures used by the military services. He also testified that a test result of 193 nanograms of the metabolite of cocaine in the urine can be produced by a particle of cocaine weighing 12 micrograms. That amount of cocaine, he testified, is "an infinitesimal amount that an individual chemist could not really weigh out in a laboratory. It's like a particle of dust." He also opined that a person could unknowingly ingest that small amount of cocaine without any apparent physical effect.

The defense counsel also sought to show that the positive laboratory test for cocaine could have been caused by contamination of the urine sample. In furtherance of this theory, the trial defense counsel sought to introduce the testimony of Doctor Manders about possible contamination from minute particles of cocaine likely to be on any person's hands as a result of contact with contaminated materials. Counsel, in an effort to establish the defense theory of contamination, asked Doctor Manders whether there were studies of cocaine being present on everyday objects. The military judge sustained the trial counsel's objection and stated, "You should be asking his opinion about the data you submitted which is a prosecution exhibit, not some article that's not been brought into court which assumes facts which are not in evidence."

## II.

### A. Cross-examination of Government Expert

■ The appellant contends that the military judge unduly restricted the defense counsel's cross-examination of Doctor Fretthold, the government's expert toxicologist. We agree.

"Bias, prejudice, or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by evidence otherwise adduced." Military Rule of Evidence 608(c) [hereinafter Mil. R.Evid.]. "Cross-examination should be limited to the subject matter of the direct examination *and matters affecting the credibility of witnesses* (emphasis added). Mil.R.Evid. 611(b). *See also United States v. Bahr,* 33 M.J. 228 (C.M.A.1991); *United States v. Hayes,* 15 M.J. 650 (N.M.C.M.R.1983).

■ Exclusion of cross-examination evidence can have constitutional as well as evidentiary implications. The Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." Supreme Court cases construing the Confrontation Clause hold that "a primary interest secured by it is the right of cross-examination." *Douglas v. Alabama,* 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965). While the military judge has broad discretion to preclude repetitive and unduly harassing interrogation, the cross-examiner is allowed to impeach and discredit the witness.

We find that the military judge was too quick to cut off a valid line of cross-examination used to demonstrate possible bias. In this case defense counsel should have been permitted to expose to the members the significant personal financial interest the witness had in favorably portraying lab operations. A witness who has a $121,710 annual salary at risk clearly has the motive to portray lab operations in a favorable light. When presented with that information the members could appropriately draw inferences relating to his reliability. *See Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). By precluding the members from learning about this potential pecuniary bias, the appellant was denied his right of effective cross-examination.

We hold that the military judge abused his discretion in precluding the defense counsel's cross-examination of the government's expert witness in this case.

### B. Limiting the Testimony of the Defense Expert

■ We also agree with the appellant's assertion that the military judge erred in limiting the defense counsel's examination of the defense expert witness, Doctor Manders.

The military judge's ruling was an abuse of discretion that was contrary to the provisions of the Military Rules of Evidence. Military Rule of Evidence 401 establishes a low threshold of relevance and Military Rule of Evidence 402 creates a presumption that relevant evidence should be admissible. The testimony should have been admissible as it was relevant to the defense theory of the case.

Military Rule of Evidence 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

In applying this rule, "the proper standard is helpfulness, not absolute necessity." *United States v. Combs*, 39 M.J. 288, 291 (C.M.A. 1994); *United States v. Meeks*, 35 M.J. 64, 68 (C.M.A.1992); *United States v. Nelson*, 25 M.J. 110, 112 (C.M.A.1987), *cert. denied*, 484 U.S. 1061, 108 S.Ct. 1016, 98 L.Ed.2d 982 (1988).

Further, the military judge inexplicably failed to apply Mil.R.Evid. 703. This rule states:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert, at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

This rule supplanted the traditional common law approach which restricted expert testimony to opinions based upon facts presented in evidence.

By precluding presentation of the defense expert's opinion and disclosure of the facts and data on which the opinion was based, the military judge interfered with the appellant's substantial right to present a defense. *See, e.g., Combs*, 39 M.J. at 292 (holding that the Military Rules of Evidence liberally allow for expert testimony to assist the trier of fact).

Finally, we conclude that the military judge's error in cutting off the cross-examination of Doctor Manders was sufficiently prejudicial in this closely-contested case as to be prejudicial to the substantial rights of the appellant, and that a rehearing is necessary.

We need not decide if the military judge's error in precluding the defense counsel from presenting the dollar amount of the salary received by Doctor Fretthold is sufficiently prejudicial *of itself* to require a rehearing. That error, in combination with the error involving Doctor Manders does, however, certainly strengthen our belief that a rehearing is necessary in this case.

The findings of guilty and the sentence are set aside. A rehearing may be ordered by the same or a different convening authority.

JOHNSTON, Judge, concurring.

I concur with the opinion of the court. Additional comments are needed, however, in regard to the first specified issue concerning actions of the military judge during trial.

The military judge in this case, a major, was a reserve officer who was normally employed as a civilian prosecutor for a two-county district in North Carolina. As a civilian prosecutor who was on active duty for a short period of time for duty as a military judge, it was important for him to ensure that his conduct at trial enhanced both the appearance and actuality of impartiality and fairness of the military justice system. Unfortunately, his conduct during trial did neither.

During the trial, the military judge took several actions and made many rulings that revealed his advocacy for the prosecution.

1. When the defense counsel sought to question a member about his "feelings" about the presumption of innocence applicable at trial, the military judge improperly imposed his own objection and required the trial defense counsel to move on to other questions. *See United States v. Smith*, 27 M.J. 25 (C.M.A.1988).

2. In response to a defense objection about documents offered as evidence during the testimony of a prosecution expert witness, the military judge suggested that trial

counsel ask a particular question that would be unobjectionable. The defense counsel objected to the military judge "assisting the trial counsel to try his case, and aiding him in making the foundation for these evidentiary issues."

3. The military judge extensively questioned a defense witness after counsel were through with their queries. Trial defense counsel objected to the military judge playing "the role of the prosecutor" because the judge was not seeking to clarify questions he might have had were he the fact finder in the case. The military judge noted the objection, told the trial defense counsel to "take a seat," and continued with his questions.

4. The military judge improperly limited the number of witnesses who testified about problems with urine collection at the unit. The trial defense counsel attempted to use a series of witnesses to reveal all the problems that were encountered in the unit's effort to gather urine samples. The military judge would not allow the trial defense counsel to summon more witnesses to testify about those problems.

5. The military judge admonished the trial defense counsel for presenting evidence that was not "logically relevant to any of the issues in this case." The defense counsel was trying to show that urine sample bottles were neither safeguarded nor properly accounted for during collection. The military judge abused his discretion in making the comments in front of members.

6. The military judge improperly restricted the efforts of trial defense counsel to show that the defense expert had testified previously for the prosecution and should not be perceived as having a defense-oriented bias.

7. During sentencing, the military judge improperly restricted the trial defense counsel's request to the members for minimal punishment equivalent to that administered under Article 15, UCMJ.

I believe that the military judge abandoned his impartiality and became an advocate for the prosecution as shown by his openly adversarial relationship with the trial defense counsel and numerous improper rulings. *See United States v. Hobbs*, 8 M.J. 71 (C.M.A.1979); *United States v. Wood*, 29 M.J. 1075 (A.C.M.R.1990). The military judge's abuses of discretion as outlined in the opinion of this court were merely the most egregious samples of his partiality.