UNITED STATES, Appellee,

v.

Aaron COSBY, Jr., Staff Sergeant, U. S. Army, Appellant.

No. 40588.

CM 439532.

U. S. Court of Military Appeals.

Aug. 30, 1982.

For Appellant: *Captain Joseph A. Russelburg* (argued); *Colonel Edward S. Adamkewicz, Jr., Major Robert D. Ganstine* (on brief); *Major Raymond C. Ruppert.*

For Appellee: *Captain Richard P. Laverdure* (argued); *Major John T. Meixell, Major Ted B. Borek* (on brief); *Colonel R. R. Boller, Major John T. Edwards.*

OPINION OF THE COURT

PER CURIAM:

Appellant was convicted, contrary to his pleas, of larceny of two winches, the property of the United States, and wrongful appropriation of a government vehicle, both in violation of Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921. He was also charged with, but acquitted of, wrongful sale of government property (the winches), a violation of Article 108, UCMJ, 10 U.S.C. § 908. His sentence to be discharged from the service with a bad-conduct discharge was approved by the convening authority. The Court of Military Review set aside the finding of guilty of

**4**

wrongful appropriation of the vehicle, but affirmed the findings of guilty of larceny of the winches and the sentence. We granted review of the following issues:

## GRANTED ISSUE

WHETHER THE EVIDENCE INTRODUCED ON THE MERITS TO PROVE THE OFFENSE OF LARCENY OF MILITARY PROPERTY IN VIOLATION OF ARTICLE 121, UCMJ, WAS INSUFFICIENT IN THAT THE EVIDENCE SHOWED THAT THE PROPERTY WAS OBTAINED BY THE APPELLANT UNDER CIRCUMSTANCES WHICH WERE NOT PROVEN TO BE WRONGFUL AND THERE WAS NO EVIDENCE OF WRONGFUL CONVERSION OF THE PROPERTY BY THE APPELLANT AFTER HE HAD OBTAINED THE PROPERTY.

## SPECIFIED ISSUE

WAS THE INSTRUCTION ON THE ELEMENT OF WRONGFULNESS OF THE TAKING FOR THE OFFENSE OF LARCENY ADEQUATE AND SUFFICIENT.

According to the Government's evidence, Sergeant First Class Fleming, the shop foreman of the Material Support Center, Camp Carroll, Korea, was approached by appellant, who "came up wanting two winches or either some hydraulic pumps." Fleming put appellant off, and appellant agreed to check back with Fleming several days later. Fleming, obviously perceiving impropriety, promptly reported the incident to Special Agent Mahan of the United States Army Criminal Investigation Command (CID). Mahan told Fleming to "go ahead and get the parts" for appellant.

Several days later, appellant called Fleming to see if he had the parts; Fleming told appellant that he did, but that he "needed some money." Appellant asked how much, and Fleming told him, "a couple of hundred dollars." Appellant responded that "it would be no problem," adding that he would see a Mr. Lee about it.

That same afternoon, appellant arrived at the Camp Carroll Support Center driving a government truck. Fleming loaded the winches onto the truck and provided appellant with the papers necessary to remove them from Camp Carroll. These documents were prepared in coordination with Fleming's superiors and Agent Mahan. After the winches were loaded, Fleming and appellant went to a nearby snack bar, where appellant paid Fleming about $200 in Korean currency. After a short time, appellant left, saying that he was on his way to Seoul to see a Mr. Park. Fleming went over to Agent Mahan, who was present in the snack bar, and turned over the money.

The surveillance vehicles provided by Mahan lost appellant, being unable to keep up with him on the expressway. Appellant was last seen heading in the direction of Seoul with two boxes visible in the rear of the truck. Reasoning that appellant would eventually return to Camp Ames, his duty station, Mahan proceeded to that location and alerted the gate guards. That evening—approximately six and one-half hours after he departed Camp Carroll—appellant was detained as he attempted to enter Camp Ames. Before Mahan arrived at the gate, appellant tried to persuade the gate guard to hold approximately $800 in Korean currency for him. The gate guard refused, and Mahan seized the currency when he arrived. He also checked appellant's truck (which was the same type that appellant had at Camp Carroll) and found it empty.

The defense case on the merits consisted exclusively of evidence of appellant's good character.

I

Appellant contends that there was no evidence presented which suggested criminal behavior on his part and that his actions were entirely consistent with legitimate, official use of the winches. Not being a fact-finding court, we must examine the record of trial to determine if there is some competent evidence in the record from which the fact-finder could find, beyond a reasonable doubt, the existence of every

element of the offense charged. *E.g., United States v. Wilson*, 6 M.J. 214 (C.M.A. 1979); *United States v. Taylor*, 21 U.S.C. M.A. 220, 44 C.M.R. 274 (1972); *United States v. Papenheim*, 19 U.S.C.M.A. 203, 205, 41 C.M.R. 203, 205 (1970).

Larceny requires evidence:

(a) That the accused wrongfully took, obtained, or withheld from the possession of the owner or of any other person the property described in the specification; (b) that the property belonged to a certain person named or described; (c) that the property was of the value alleged, or of some value; and (d) that the taking, obtaining, or withholding by the accused was with intent permanently to deprive or defraud another person of the use and benefit of property or to appropriate it to his own use or the use of any person other than the owner.

Para. 200*a*, Manual for Courts-Martial, United States, 1969 (Revised edition); *see* Article 121, UCMJ, *supra.*

■ There is no question that the record contains evidence that appellant took or obtained the winches from the possession of a government agent; that the property belonged to the Government; and that the value of the property exceeded the amount alleged. Thus, the only questions are whether the evidence was sufficient to show that appellant obtained the property wrongfully and whether he intended permanently to deprive the Government of the use and benefit of the property or to appropriate it to his own use or to the use of any person other than the Government. Such matters being rarely provable by direct evidence, the court members were entitled to consider circumstantial evidence.

■ In this regard, the court members could consider that appellant approached SFC Fleming in such a manner as to lead Fleming to believe that appellant had an illegitimate purpose, and that, upon request, appellant unhesitatingly agreed to pay, and did pay, $200 in Korean currency for the winches. In addition, the members could rely upon their knowledge of the distances separating Camp Carroll, Camp Ames, and Seoul, and the time normally necessary to traverse those distances by vehicle. Further, the members could consider appellant's arrival at Camp Ames in an empty truck in possession of a substantial amount of Korean currency and his futile attempt to dispose of the money. These acts and circumstances refute a legitimate use of the property and are probative of the wrongfulness of the taking and appellant's intent permanently to deprive.

We hold that the evidence in this record is adequate to support the findings of the court-martial.

## II

The specified question deals with the sufficiency of the military judge's instructions concerning the same issue, i.e., the wrongfulness of the taking of the property. The instructions included:

Now, the both offenses [larceny and wrongful appropriation] I have advised you that you must find that the taking was wrongful. Now basically, the law considers that a "taking" the property from another is considered wrongful, now when it's without the lawful consent of the other person, and when it's accompanied by criminal state of mind. Therefore, if you find in this case that the accused took both, the vehicle as well as the winches, and the reckless criminal intention to take them for his own use temporarily or permanently, depending on the specification, then you may infer from that that the accused, in fact, had the necessary intention, and that his actions were wrongful. If you do not find that it was without consent and with criminal state of mind, then the taking, of course, would not be wrongful. In this regard as to wrongful appropriation, you have before you, of course, evidence that there was what purported to be a valid dispatch issued for the use of the vehicle; you, on the other hand, have evidence before you that the individual who signed that dispatch, and the person who requested it, were doing so in cooperation with the CID in order to, in essence, "set

up" the individual for that purpose. If, therefore, you believe that consent would not normally have been given but for this act, then you may also, if you wish, infer that the taking was wrongful and would not have been given otherwise. Any inference of this nature is not binding upon you, you may draw it if you wish to, but again, simply use your common sense and consider all the facts and circumstances as to whether or not the taking was wrongful. Unless you find beyond a reasonable doubt that the taking, both of the vehicle and of the winches, was in fact wrongful, as I've defined that, then you must find the accused not guilty. By the same token, unless you find the necessary permanent intention under the first Specification, and temporary under the second, also you must find the accused not guilty.

We conclude that these instructions were sufficient. *See* para. 200*a*(4), Manual, *supra*; and para. 4–90, Department of the Army Pamphlet 27–9, Military Judges' Guide (1969). The military judge was quite correct in instructing that the court members might find appellant guilty of a wrongful taking even though the property was released to him by competent authority. *United States v. Cassey*, 14 U.S.C. M.A. 558, 34 C.M.R. 338 (1964) (neither the Air Force Office of Special Investigations nor the accused's pretended confederate could consent to a taking of government-owned property). Appellant correctly points out that the military judge was wrong in citing "evidence that there was what purported to be a valid dispatch issued for the use of the vehicle," when in fact that evidence referred to a gate pass which authorized appellant to remove the winches from Camp Carroll. This discrepancy, however, was insignificant.

Furthermore, despite ample opportunity to do so, appellant failed to object at trial to the instructions given or to request additional instructions. Absent clear error, such objections do not survive on appeal. *See United States v. Salley*, 9 M.J. 189, 193 (C.M.A.1980).

Accordingly, the decision of the United States Army Court of Military Review is affirmed.