UNITED STATES, Appellee,

v.

George H. DiCUPE, Technical Sergeant,
U.S. Air Force, Appellant.

No. 45516.
ACM 23515.

U.S. Court of Military Appeals.

March 31, 1986.

For Appellant: *Mayda Colon Tsaknis,
Esq.* (argued); *Colonel George R. Stevens*
and *Major Richard A. Morgan* (on brief);
*Colonel Verlin D. Dickman, Colonel Leo
L. Sergi, Major Kathleen G. O'Reilly,
Captain Deborah J. Hudspeth.*

For Appellee: *Major Robert E. Ferencik*
(argued); *Colonel Kenneth R. Rengert*
and *Major George D. Cato* (on brief).

*Opinion of the Court*

COX, Judge:

Despite his pleas, a general court-martial convicted the accused of larceny of $1,000.00 from the Zaragoza Officers' Open Mess (Officers' Club), in violation of Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921. The approved sentence extends to a bad-conduct discharge, confinement at hard labor for 8 months and reduction to the grade of E–3. The Court of Military Review affirmed the findings and sentence. 14 M.J. 915 (1982). We granted the accused's petition to review three issues, which we will discuss *seriatim.*

I

WHETHER AS A MATTER OF LAW THE EVIDENCE WAS SUFFICIENT TO PROVE APPELLANT'S GUILT BEYOND A REASONABLE DOUBT.

■ Much of the evidence against the accused was circumstantial in nature. The

club cashier had secured $1,000.00 in twenty-dollar bills in the safe in her office for the night. The bills were bound by a rubber band. The cashier was responsible for locking that safe when she left work each day. The accused, a night manager at the club, had access to the office and to another safe located therein, but did not know the combination of the cashier's safe. The following day, the same cashier found the safe secured but the packet of twenty-dollar bills was missing. A search of the safe failed to uncover the money. However, some 10 days later, during a consent search of the accused's on-base quarters, $900 in twenty-dollar bills was found in a plastic bag, in a service cap on the back of a shelf in the accused's bedroom closet.[1] When the money was found, the accused disclaimed knowledge of its presence in his quarters or how it came to be there.

At this point, the evidence before the court members presented three possible scenarios:

(1) Someone other than the accused stole the money and later secreted it in accused's bedroom;

(2) Someone other than the accused stole the money but the money that was found in his quarters was not related to the theft; or,

(3) The accused stole the money and attempted to secrete it in his bedroom.

Obviously, if the cashier's safe had been locked and the accused, in fact, did not know the combination, it would have been difficult to establish his complicity in the theft of the money. However, there was some confusion as to whether the cashier actually locked the safe as she was supposed to have done when she left work for the day, and there was evidence that the safe had been left unlocked in the past. It was the night manager's responsibility to check both safes when he closed for the night.

In addition—and most damaging to the accused's assertions of innocence—there was a statement made by the accused to a

lady friend. She remembered the substance of the statement in this form:

> He goes, "Well, I don't know if you know of the trouble that I'm in, but I wouldn't have moved in base housing if I would've known" —he said, "I wouldn't of moved into base housing because then I wouldn't have been caught." He goes— he said, "The SP's can come in and search your house," and he said, "If you lived off base, they couldn't." That's not his exact words, but, you know, that was the gist of the conversation.

In our review, "we must examine the record of trial to determine" whether there was any "competent evidence ... from which the" triers of fact "could find, beyond a reasonable doubt, the existence of" each and "every element of the offense charged." *See United States v. Cosby*, 14 M.J. 3, 4–5 (C.M.A.1982), and cases cited therein. The members of the court-martial, the convening authority, and the Court of Military Review concluded that the evidence established the accused's guilt beyond a reasonable doubt. These are the authorities empowered by statute to determine questions of fact. *United States v. McCrary*, 1 U.S.C.M.A. 1, 1 C.M.R. 1 (1951). While we may weigh and evaluate the evidence for the purpose of determining whether it was sufficient enough for the triers of fact to "find, beyond a reasonable doubt, the existence of every element of the offense charged," *United States v. Cosby, supra*, we do not apply the reasonable doubt standard on appeal. *United States v. McCrary, supra*. We conclude that there is sufficient competent evidence of record to support the findings of guilty in this case.

## II

## WHETHER APPELLANT WAS DENIED THE CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL

On appeal, the accused questions the tactics of trial defense counsel in not objecting

---

1. When found, the bills were secured by a rubber band. Unfortunately, no further identification was made by either the cashier or the special agent who conducted the search. There was no direct evidence connecting the money found to that taken from the club safe.

on several occasions. Review of a defense counsel's trial strategy is difficult, if not impossible, on appeal because the appellate court is not privy to the knowledge of the trial participants except to the extent such information appears in the record of trial. Before considering the constitutional aspects of the granted issue, we will determine whether appellant's statutory rights were violated by counsel's performance. We have held that an accused is guaranteed by Article 27(a), UCMJ, 10 U.S.C. § 827(a), "the *effective* assistance of counsel," *United States v. Rivas*, 3 M.J. 282, 287 (C.M.A.1977), and that means "a reasonably competent counsel who exercises that competence in his ... behalf throughout the trial." *United States v. Jefferson*, 13 M.J. 1, 5 (C.M.A.1982). However, we have not attempted to define specifically those skills and knowledge demanded of a competent counsel. In *United States v. Jefferson, supra* at 6, we stated:

> [W]e have "assume[d] that the accused is entitled to the assistance of an attorney of reasonable competence" and have expressed the expectation that the attorney will " 'exercise ... the customary skill and knowledge which normally prevails ...' 'within the range of competence demanded of attorneys in criminal cases.' " We believe that ... [this] requires that the attorney act as a diligent and conscientious advocate on behalf of his client.

Quoting *United States v. Rivas, supra* at 288.

In reviewing claims of inadequacy of representation we have used the standard set out in *United States v. DeCoster*, 624 F.2d 196, 208 (*en banc*) (D.C.Cir.1979) (plurality opinion): "The claimed inadequacy must be a serious incompetency that falls measurably below the performance ordinarily expected of fallible lawyers." *See also United States v. Jefferson, supra.*

The Court below held:

> In our review of this record, we find no instances when the trial defense counsel remained silent when events at trial cried out for action. It is obvious that he was prepared and gave accused his best ef-

forts. This case could have been defended differently and the accused did not receive the perfect trial he would have preferred. But, it was fair and he was accorded due process of law.

*United States v. Dicupe, supra* at 918.

■■ It may well be that another defense counsel might have proceeded differently, both strategically and tactically. However, it also might well be that such an approach would not have succeeded as well as the one adopted here. The assertion of inadequate representation is commonly made, particularly where counsel is appointed and not personally retained. But appellate courts do "not lightly vacate a conviction" in the absence of a serious incompetency which "falls measurably below the performance ... of fallible lawyers." *United States v. DeCoster, supra* at 214, 208. Here, defense counsel was well prepared, and he presented evidence and cogent arguments in favor of his client. That he did not object at the times envisioned by appellate defense counsel to be appropriate may indicate his tactical judgment instead of incompetence. In any event, we cannot see where his asserted inadequacy materially prejudiced the substantial rights of the accused. *United States v. Myles*, 7 M.J. 132 (C.M.A.1979). The record indicates that "his representation of" the accused "was adequate" and "did not fall below the performance ordinarily expected of fallible lawyers." *See United States v. Jefferson, supra* at 7.

Our conclusion that there was no prejudice to appellant removes the need to consider whether his constitutional right to counsel was violated. *See Strickland v. Washington*, 466 U.S. 668, 697, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

### III

WHETHER THE TRIAL JUDGE ERRED IN ADMITTING TESTIMONY CONCERNING AN UNPROVEN, SPECULATIVE, NON–CONCLUSIVE, UNCHARGED MISCONDUCT.

■ This issue is related to the previous one and, as stated, creates a misleading

conclusion.[2] The challenged testimony came from the direct examination of a Mrs. K., who was the relief cashier. Mrs. K. testified that once she had forgotten to lock the safe at the close of the day, and the following day she discovered that $40 was missing from a "bank" she had prepared previously. She further testified that the accused had been the night manager on the evening in question but that she did not mention the shortage to him.

Defense counsel did not object to Mrs. K.'s testimony and, indeed, during cross-examination, asked her whether she believed that the accused had taken the money. Defense counsel also elicited testimony to the effect that shortages in various funds occurred frequently. However, at the conclusion of her testimony, defense counsel asked for an instruction on uncharged misconduct. The military judge refused to give the instruction at that time but did instruct the members before findings. Trial counsel sought to justify the presentation of the testimony on the grounds that it "was simply to rebut testimony that there had been no previous incidents regarding the accused's conduct as a night manager." Defense counsel had elicited such testimony from the club managers during cross-examination. The instruction finally agreed upon stated:

> During the trial, evidence was admitted regarding a loss of forty dollars from the general cashier's safe on an occasion when the accused was night manager at sometime prior to the date on which the charged offense was alleged to have occurred. Such evidence was admitted solely for the limited purpose of rebutting testimony elicited by the defense regarding the prior good conduct and performance of the accused as a night manager at the Officers Open Mess. The extent, if any, to which this evidence has accomplished that purpose is a matter for your determination. I wish to emphasize, however, that this evidence may be considered for no other purpose

than this limited purpose that I've outlined, no other purpose whatsoever. You may not infer from such evidence that the accused has an evil disposition or a criminal propensity and that he therefore committed the offense charged that is before you today.

Appellate defense counsel now contend, as they did below, that this evidence is inadmissible under Mil.R.Evid. 404(b), Manual for Courts Martial, United States, 1969 (Revised edition), which provides:

> Other crimes, wrongs, or acts. Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In response, the Court below held:

> The list of reasons contained in the rule for the admission of uncharged misconduct is not exhaustive. *United States v. Johnson*, 634 F.2d 735 (4th Cir.1980).

Evidence of uncharged misconduct may be introduced to rebut an issue raised by the defense. *United States v. Janis*, 1 M.J. 395 (C.M.A.1976); *United States v. Johnson, supra*; *United States v. Fortes*, 619 F.2d 108 (1st Cir.1980). Further, such evidence must be plain, clear and conclusive and connected with the charged offense in point of time, place and circumstances. *United States v. Janis, supra*; *United States v. Butcher*, 1 M.J. 554 (A.F.C.M.R.1975); *United States v. Kelly*, 7 U.S.C.M.A. 584, 23 C.M.R. 48 (1957). Trial judges must determine whether evidence of uncharged misconduct is offered for a proper purpose, whether it is relevant and whether its probative value outweighs the danger of unfair prejudice to the accused. Mil.

---

**2.** The issue as stated could lead only to one answer. However, as shown below, the evidence could be subject to several interpretations

and varying inferences other than as being the uncharged misconduct of the accused. Apparently trial defense counsel recognized this.

R.Evid. 403; S. Saltzburg, L. Schinasi, D. Schlueter, *Military Rules of Evidence Manual* 184 (1981). When viewed against that background we find the evidence was properly before the court and correctly limited in its application by the instructions given to the members by the military judge.

*United States v. Dicupe, supra* at 917.

This testimony was offered as rebuttal to the testimony that the accused performed his duties as night manager "[o]utstandingly well." Since one of his duties was to check and secure the safes at closing, this incident related by Mrs. K. would indicate that on at least one occasion, he failed to act in accordance with his assigned tasks.

In addition, the nature of the testimony permits varying inferences to be drawn. One, of course, is that the accused took the $40. But, as recognized by trial defense counsel, it also could be inferred that the cashiers were careless in their performance of duties to secure the safes and in correctly counting the cash in their custody; and that persons other than the accused might have had access to the money within the safes. Further, it might arguably permit the inference to be drawn that the assistant cashier had miscounted the money allegedly taken by the accused. In view of the many conflicting inferences inherent in

such testimony, reference to Mil.R.Evid. 403 is apposite. That Rule states:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Clearly the military "judge is given enormous leeway under this Rule," and in close cases "evidence should be admitted rather than excluded." S. Saltzburg, L. Schinasi, D. Schlueter, *Military Rules of Evidence Manual* 176 (1981). Under the particular circumstances of this case, we cannot conclude that the military judge in any way abused his discretion[3] here, particularly where there was no objection and no motion to strike. Mil.R.Evid. 103(a)(1). In addition, the cautionary instruction set the testimony in the proper context for the court members.[4] Consequently, we find no error prejudicial to the substantial rights of the accused.

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge EVERETT concurs.

---

**3.** The issue is misleading in that there was no request for a ruling by the military judge. However, to the extent that the issue, as stated, presupposes an obligation to *sua sponte* intervene, we find no such obligation arose here.

**4.** It would have been better if trial counsel had limited the testimony to matters more directly

related to the rebuttal of evidence of the accused's outstanding duty performance without reference to the consequences of his failure to do so.