**UNITED STATES**

v.

**Airman First Class Joshua L. WATSON, United States Air Force.**

**ACM 33124.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 21 Nov. 1997.

Decided 6 Feb. 2001.

Schlegel, Senior Judge, filed opinion concurring in the result.

Appellate Counsel for Appellant: Colonel Douglas H. Kohrt and Captain Teresa L. Davis.

Appellate Counsel for the United States: Colonel Anthony P. Dattilo, Lieutenant Colonel Ronald A. Rodgers, and Major Tony R. Roberts.

Before SCHLEGEL, BURD, and LOVE, Appellate Military Judges.

## OPINION OF THE COURT

LOVE, Judge:

Court members convicted appellant of one specification of violating a lawful order and two specifications of false official statement. Article 92, 107, UCMJ, 10 U.S.C. §§ 892, 907. His approved sentence was a bad-conduct discharge, confinement for 6 months, and reduction to E–1. The appellant claims that the military judge erred by granting the government's peremptory challenge of a female court member and that his sentence is inappropriately severe. Although we believe the judge should have more clearly addressed the basis for his ruling, his ultimate decision on the peremptory challenge was not clearly erroneous, and the sentence is appropriate.

## I. FACTS

The appellant was a first-term airman stationed at Fairchild Air Force Base, Washington. During his enlistment, the appellant encountered financial difficulties that he attributed to his car. After unsuccessfully attempting to reduce this burden by restructuring his car insurance coverage, the

appellant began to consider more creative ways to solve the problem. This included asking friends how the destruction of a car would impact one's insurance obligation. Shortly thereafter, a fire destroyed the appellant's car outside of his dormitory.

The appellant explained to investigators that several hours before the fire, he picked up a hitchhiker who smoked. The appellant surmised that the hitchhiker's carelessly-handled cigarette touched off the blaze. A short time later, a friend, with whom the appellant discussed his car insurance problems, told investigators about his suspicion that the appellant had started the fire. In a subsequent interview, the appellant reiterated his hitchhiker story and denied ever discussing the destruction of his car.

During the course of the investigation, the appellant was ordered to have no contact with a former girlfriend who was expected to testify against him at the court-martial. He violated this order by talking with her and giving her a notebook containing written communications.

## II. PEREMPTORY CHALLENGE

Originally, the court-martial panel was composed of nine officers-six men and three women. Prior to trial, one male court member was excused. After voir dire, trial counsel exercised a peremptory challenge against a female panel member. Defense counsel objected to the challenge based upon "Batson" (*Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)), and the judge asked the trial counsel to explain the basis for his challenge. Trial counsel explained that his challenge was based on his observation of the member's demeanor in response to voir dire questions. He characterized her reactions as non-responsive and exasperated. The record of trial states:

> TC: [T]he other members would at least make some affirmative head nod that was very clear or some sound.... [The member] made no indication or acknowledgment one way or the other. It was only after I stared at her for a significant length of time, several seconds, that she would finally nod. I also sensed a look of

exasperation on a couple of my questions to her; that caused me some concern.

The defense counsel did not object to trial counsel's explanation. The military judge accepted trial counsel's explanation and sustained the challenge without comment.

### Analysis

■ The standard of review is whether the military judge's factual determination regarding the presence or absence of discrimination underlying a peremptory challenge is clearly erroneous. *United States v. Chaney,* 53 M.J. 383 (2000); *United States v. Greene,* 36 M.J. 274, 281 (C.M.A.1993).

■ Rule for Courts–Martial (R.C.M.) 912(g)(1) simply provides that each party may challenge one member of a panel peremptorily. At one time, a party's use of a peremptory challenge was virtually unassailable. In recent years, however, civilian and military courts have refined this practice to ensure that it is not used to further discrimination in violation of the Due Process Clause of the Fifth Amendment to the Constitution of the United States. Now, "[n]either the prosecutor nor the defense may engage in purposeful discrimination on the basis of race or gender in the exercise of a peremptory challenge." *Chaney,* 53 M.J. at 384 (citing *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *J.E.B. v. Alabama ex rel. T.B.,* 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994); *United States v. Witham,* 47 M.J. 297 (1997); *United States v. Moore,* 28 M.J. 366 (C.M.A.1989)).

■ In courts-martial, the party exercising a peremptory challenge against a female court member must explain it if the other party objects. *United States v. Ruiz,* 49 M.J. 340 (1998). The challenging party's explanation must be neutral regarding gender. The judge must then assess counsel's explanation and make a factual determination on its neutrality. "[A] peremptory challenge will be sustained unless the proffered reason is 'unreasonable, implausible, or otherwise makes no sense.'" *Chaney,* 53 M.J. at 385 (citing *United States v. Tulloch,* 47 M.J. 283, 297 (1997)).

In this case, the defense objected to the government's challenge to the female member based upon the *Batson* line of cases. The prosecutor explained that he viewed the challenged member as reluctantly responsive and exasperated at the questioning. The defense did not challenge the prosecutor's assessment of the member, nor did the defense object when the judge sustained the challenge. Therefore, the appellant has waived his right to raise this issue on appeal. *United States v. Gray*, 51 M.J. 1 (1999).

The facts of this case, however, compel us to reiterate that judges and counsel must take care in handling peremptory challenges to racial minorities and females when the sole basis of the challenge is the member's demeanor. In *United States v. Jackson*, 52 M.J. 756 (A.F.Ct.Crim.App.1999), this court held that when a military judge rules on a peremptory challenge that is opposed under *Batson* and the neutral basis is purported to be the member's demeanor, the judge should follow a 3–step process in making findings of fact. First, that the behavior giving rise to the peremptory challenge in fact occurred. Second, that the party wishing to exercise the strike has proffered a supporting reason that (a) is clear, reasonably specific and gender/race neutral; (b) is not unreasonable, implausible, or nonsensical; and (c) demonstrates some connection to the member's ability to faithfully execute court-martial duties. Third, that the party's proffer is sincere, based on the military judge's knowledge of counsel, his observation of counsel's demeanor at trial, and his evaluation of other available evidence. *Jackson*, 52 M.J. at 758.

Although the military judge did not make these specific findings on the record (this case was tried prior to *Jackson*), we can presume that he weighed counsel's assertions and relied upon his own in-court observations of the panel member in sustaining the challenge in this case. *See Gray*, 51 M.J. at 34. In *Jackson*, we could not make that presumption because, while counsel asserted that the challenged member was "unresponsive" during voir dire, the record of trial contradicted his assertion (because it reflected that all members *were* responsive)

and the trial defense counsel objected to the trial counsel's characterization of the member's demeanor. In the present case, there is no conflict with the record of trial because the member eventually responded to all questions, albeit reluctantly. As this case illustrates, however, responsiveness is not necessarily a "yes" or "no" proposition; responsiveness is often a matter of degree. Thus, while this record of trial reflects the member's behavior as responsive throughout voir dire, court participants saw subtle nuances in the member's demeanor that troubled them and that fairly supported a peremptory challenge. "On appeal, the military judge's determination on the issue of purposeful discrimination is given great deference because it is based primarily upon the judge's personal evaluation of the credibility of the counsel making the peremptory challenge." *Chaney*, 53 M.J. at 385.

Again, based on the defense's failure to contest the trial counsel's characterization of the member's demeanor, and the judge's ready acceptance of the prosecutor's basis for the challenge, we can presume that the member's reaction to the prosecution's voir dire questions was something less than ideal. We also note that even after the challenge was granted, two female members remained on the panel, which is a factor the judge may well have considered in determining that the prosecutor was not motivated by gender-based discrimination. However, we should not have to presume important details about a ruling of this nature. We should be able to read the judge's analysis and reasoning in the record of trial. Therefore, while we find no clear error on the judge's part in this case, we encourage judges and counsel to be more thorough in documenting their analysis of peremptory challenges when applied to minority and female members.

## III. SENTENCE SEVERITY

"Sentence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves." *United States v. Healy*, 26 M.J. 394, 395 (C.M.A.1988). In this case, the appellant gave two separate false official statements about a very serious matter-the

on-base destruction of his car. Then, while facing court-martial charges for insurance fraud and false statements, he intentionally violated his commander's order not to contact a potential witness in his court-martial. The significance of his deception and disregard of command authority was not lost on the panel of officers who assessed his sentence, nor on the convening authority who approved it. Given the facts surrounding the appellant's offenses and the maximum punishment authorized, we find the sentence is not unjust.

## IV. CONCLUSION

We conclude the findings and sentence are correct in law and fact, the sentence is appropriate, and no error prejudicial to the substantial rights of the appellant was committed. Accordingly, the findings of guilty and the sentence are

AFFIRMED.

SCHLEGEL, Senior Judge (concurring):

I concur in the result. The convening authority initially selected six men and three women to sit as the voting members of the appellant's court-martial. Prior to trial, one of the men was excused. After challenges, four men and two women heard the case. The appellant was not a woman nor a member of another cognizable group.

In *United States v. Ruiz*, 49 M.J. 340, 344 n. 2 (1998), our superior court wrote, as follows:

> Virtually all of our cases applying *Batson* and its progeny to the military system involve fact patterns wherein the challenged court member is either the only minority member or is one of a very small percentage of minority members.... [T]here may be circumstances where the exercise of a single peremptory challenge, in the context of the composition of a particular court-martial panel, may not be enough even to raise the spectre of improper motive.

On these facts, I would find the question of purposeful discrimination or improper motive was not raised, and the use of the per se rule established for racial discrimination in *United States v. Moore*, 28 M.J. 366 (C.M.A.1989),

and extended to gender discrimination in *Witham*, inappropriate. Instead, because neither the accused nor the victim (in reality the Air Force as a community was the victim of the false statement) was a member of the cognizable group challenged, and members from that group remained on the court panel, I would require the accused to make the prima facie showing required by the Supreme Court in *Batson*.