**UNITED STATES**

v.

**Senior Airman Torian L. BROCKS,
United States Air Force.**

**ACM 33891.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 3 Sept. 1999.

Decided 12 July 2001.

Appellate Counsel for Appellant: Lieutenant Colonel Timothy W. Murphy, Major Stephen P. Kelly, and Captain Karen L. Hecker.

Appellate Counsel for the United States: Colonel Anthony P. Dattilo, Lieutenant Colonel Ronald A. Rodgers, and Captain Christa S. Cothrel.

Before YOUNG, Chief Judge, STARR, and HEAD, Appellate Military Judges.

OPINION OF THE COURT

YOUNG, Chief Judge:

Officer members convicted the appellant of conspiring to distribute cocaine, distributing

cocaine, and introducing cocaine onto a military installation. Articles 81, 112a, UCMJ, 10 U.S.C. §§ 881, 912a. The convening authority approved the adjudged sentence: a bad-conduct discharge, confinement for 30 months, and reduction to E–1.

The appellant raises seven errors for our consideration. The first four errors relate to the selection of court members. The fifth, that the record is incomplete, was made moot by the submission of the missing pages for our review. The last two issues allege that the evidence is legally and factually insufficient and that the military judge erred by admitting information about the appellant's civilian conviction during sentencing. We find no error and affirm.

## I. Court Member Selection

The appellant contends the manner in which the members who sat on his court-martial were selected denied him a fair trial, as follows: (1) The legal office excluded all officers from the Medical Group from consideration as members (court-packing); (2) The staff judge advocate (SJA), not the general court-martial convening authority (convening authority), selected the court members; (3) The trial counsel's use of a peremptory challenge against a female court member was gender-based and that his explanation was a pretext for discrimination; and (4) The cumulative errors in selecting the court members before and during trial require reversal.

### A. Court–Packing

The appellant's first two contentions each assert improper actions by the base legal staff and the staff judge advocate to the convening authority. In each case, the appellant asserts that members were either excluded or included for improper motives. Such allegations raise the spectre of "court-packing."

■ Although a military accused does not have a right to a jury composed of a cross-section of the military community, he "does have a right to [court] members who are fair and impartial." *United States v. Roland,* 50 M.J. 66, 68 (1999). "Court-packing" or "court-stacking" is a form of unlawful command influence that occurs when a convening authority selects court members to

achieve a desired result or when "a subordinate packs the list of nominees presented to the convening authority." *United States v. White,* 48 M.J. 251, 254 (1998).

■ To raise this issue at trial, the accused must show facts which, if true, constitute unlawful command influence, and also show that the alleged unlawful command influence has a logical connection to the court-martial in terms of its potential to cause unfairness in the proceedings. *United States v. Biagase,* 50 M.J. 143, 150 (1999); *United States v. Stombaugh,* 40 M.J. 208, 213 (C.M.A.1994); *United States v. Allen,* 33 M.J. 209, 212 (C.M.A.1991). The threshold for raising the issue at trial is low, but more than mere allegation or speculation is required. *Biagase,* 50 M.J. at 150; *United States v. Johnston,* 39 M.J. 242, 244 (C.M.A. 1994). Once the issue is raised at trial, the burden shifts to the government to "persuade the military judge and the appellate courts beyond a reasonable doubt that there was no unlawful command influence or that the unlawful command influence did not affect the findings and sentence." *Biagase,* 50 M.J. at 151.

### 1. Exclusion of Medical Group Officers

■ The base legal office intentionally excluded all officers from the Medical Group from the list of court member nominees sent to the convening authority. The base SJA and chief of military justice reached this decision because all four alleged conspirators and many of the witnesses were assigned to the Medical Group and came from at least three of the four squadrons in that Group. Additionally, they reasoned that many members of that Group either knew the appellant and the witnesses or would have heard about the case from others. The decision to exclude these officers was based on a desire to avoid conflicts, unnecessary challenges for cause, and an appearance of unfairness.

"[T]he burden of demonstrating systematic exclusion of qualified persons is on the defense. . . ." *United States v. Benson,* 48 M.J. 734, 740 (A.F.Ct.Crim.App.1998). "An element of unlawful court stacking is improper motive. Thus, where the convening authority's motive is benign, systematic inclusion or

exclusion may not be improper." *United States v. Upshaw*, 49 M.J. 111, 113 (1998). Here, the motive of the SJA and his staff was to protect the fairness of the court-martial, not to improperly influence it. Even the trial defense counsel conceded that the evidence did not support a conclusion that the legal staff's motive was improper. We agree. We find, beyond a reasonable doubt, the exclusion of Medical Group officers from the court member nominations did not constitute unlawful command influence.

## 2. Staff Judge Advocate Recommending Specific Members

■ Before sending a list of 12 potential court members to the convening authority, the SJA initialed beside the names of 9, indicating his personal recommendations. The convening authority selected those same 9 officers for membership on the court-martial. Later, a second list was sent to the convening authority recommending that some of those members be replaced. This time, however, a newly assigned SJA did not recommend any particular members. The evidence established that in three of four previous courts-martial the convening authority selected each of the nominees recommended by the SJA.

At trial, the appellant argued that when the SJA identified nine specific members he unlawfully influenced the selection process in violation of Article 37, UCMJ, 10 U.S.C. § 837. He also asserted that the "involvement" of the SJA "took [the convening authority] out of his role in selecting members altogether." The military judge denied the motion to dismiss the court panel. She found no evidence to support the defense position and ruled "by a preponderance of the evidence that the convening authority did not abdicate his responsibility in the selection of court members."

It is common for legal offices across the Air Force to identify potential court-members to the convening authority. Our superior court has found this practice to be "a reasonable means of assisting the convening authority, provided it does not improperly exclude eligible servicemembers." *Roland*, 50 M.J. at 69. While it is not error for the SJA to recommend the convening authority select specific nominees, it is unnecessary and may create just the impression complained of here—that the SJA, rather than the convening authority, chose the court members. However, the SJA properly advised the convening authority: "As always, you are not limited to the accompanying nominees. You may select any officer who, in your opinion, is the best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament." We find, beyond a reasonable doubt, that these facts do not constitute unlawful command influence. There is simply no evidence that the convening authority abdicated his duties to the SJA.

### B. Peremptory Challenge

Trial counsel exercised his peremptory challenge against Major Sawyer, one of three female officers on the panel. The defense counsel then asked for a non-gender based reason for that challenge. Trial counsel explained:

> [Q]uite honestly, I noticed that she was from Maine. I noticed that she was the [Military Personnel Flight (MPF)] Commander and, although it may not necessarily be the—I don't have any statistical data saying that there are more liberal people in Maine than not, but that is factored into it and I tend to consider people that work at MPF to be more people-type persons, so irrational as it may seem, that was my basis.

The appellant did not object to this reason as being a pretext for discrimination, and the military judge did not ask the defense for comment. Instead, the military judge granted the challenge, finding that the reason offered by the trial counsel was facially neutral and not based on gender. The appellant did not object. The defense used its peremptory challenge against another male member of the court panel. Later, after all challenges had been made, the military judge told both counsel that she intended to release four members, including Major Sawyer. She then asked, "Does either side object to that?" The defense counsel replied, "No, Your Honor."

### 1. The Law

The Supreme Court has held that "potential jurors, as well as litigants, have an equal protection right to jury selection procedures that are free from state-sponsored group stereotypes rooted in, and reflective of, historical prejudices." *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 128, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994). Thus, litigants may not exercise a peremptory challenge based on the race or gender of the juror. *Id.* at 129. Under the Supreme Court's jurisprudence, once the opponent of a peremptory challenge has made out a prima facie case of discrimination (step one), the burden of production shifts to the proponent of the challenge to provide a race or gender neutral explanation (step two). *See Purkett v. Elem*, 514 U.S. 765, 767, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). The explanation must be "clear and reasonably specific." *Batson v. Kentucky*, 476 U.S. 79, 98, 106 S.Ct. 1712, 90 L.Ed.2d 69 n.20 (1986). In other words, counsel "may not satisfy the burden of production by merely denying that he had a discriminatory motive or by merely affirming his good faith." *Purkett*, 514 U.S. at 769, 115 S.Ct. 1769. "Unless a discriminatory intent is inherent in the prosecutor's explanation [step two], the reason offered will be deemed race [or gender] neutral." *Id.* at 768, 115 S.Ct. 1769 (citing *Hernandez v. New York*, 500 U.S. 352, 360, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)). If the counsel provides a race or gender neutral explanation, the judge must determine *if the opponent of the challenge has proved purposeful discrimination* (step 3). *Id.*, 514 U.S. at 767, 115 S.Ct. 1769 (citing *Hernandez* at 358–59, 111 S.Ct. 1859). At step 3, a judge may find implausible or fantastic justifications to be pretexts for purposeful discrimination. "[T]he trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal." *Hernandez*, 500 U.S. at 364, 111 S.Ct. 1859.

▉▉▉ Following the Supreme Court's lead, our superior court held that "gender, like race, is an impermissible basis for the exercise of a peremptory challenge by either the prosecution or a military accused." *United States v. Witham*, 47 M.J. 297, 298 (1997) (citing *J.E.B.; Georgia v. McCollum*, 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992); *United States v. Annigoni*, 96 F.3d 1132, 1139 (9th Cir.1996) (en banc)). While adopting the Supreme Court's conclusion, the United States Court of Appeals for the Armed Forces (CAAF) rejected the Supreme Court's allocation of the burdens of proof and persuasion. In the military, when a party peremptorily challenges a member of a cognizable group (race/gender), the other party must object and state the basis for the objection. *United States v. Moore*, 28 M.J. 366, 368 (C.M.A.1989). By objecting to the challenge, the party has established a prima facie case of discrimination. *Id.* The party making the challenge must then offer a reason for the challenge that is race or gender neutral, as applicable. *United States v. Chaney*, 53 M.J. 383, 385 (2000). The military judge must then "review the record and weigh trial counsel's credibility before he makes a factual determination regarding the presence or absence of purposeful discrimination in the panel member's rejection." *United States v. Greene*, 36 M.J. 274, 281 (C.M.A.1993) (citing *Hernandez*, 500 U.S. at 364–65, 111 S.Ct. 1859). The military judge will sustain the challenge "unless the proffered reason is 'unreasonable, implausible, or ... otherwise makes no sense.'" *Chaney*, 53 M.J. at 385 (quoting *United States v. Tulloch*, 47 M.J. 283, 287 (1997)). We will not overturn a military judge's decision unless it is clearly erroneous. *Id.* (citing *Greene*, 36 M.J. at 281).

### 2. Discussion

▉▉▉ Rather than objecting to the challenge, the appellant merely asked for an explanation and never objected to the reason tendered by the prosecution. Even after the military judge asked if they objected to her excusing Major Sawyer, the defense said they did not. Under these circumstances, we hold the appellant waived the issue by failing to object. If the appellant thought the trial counsel's proffered reason was a pretext for discrimination, he had to object to preserve the issue for appeal. *See United States v. Watson*, 54 M.J. 779, 782 (A.F.Ct.Crim.App. 2001) (holding the appellant failed to pre-

serve issue on appeal as he neither challenged the prosecutor's explanation nor objected when the military judge granted the challenge).

The broad pronouncements of our superior court applying *Batson* and adopting the *Moore* per se rule sprang from cases in which the challenged court member was either the only minority member or was one of a very small percentage of minority members on a particular panel. *United States v. Ruiz*, 49 M.J. 340, 344 n. 2 (1998). In *Ruiz*, the Court of Appeals for the Armed Forces recognized that "there may be circumstances where the exercise of a single peremptory challenge, in the context of the composition of a particular court-martial panel, may not be enough even to raise the spectre of improper motive." *Id.* Under such circumstances, the *Moore* per se rule would not apply and the party objecting to the challenge would have to establish a prima facie case of discrimination.

In this case, the convening authority detailed nine court members to the appellant's court-martial, three of whom were women. The trial counsel did not attempt to exercise a challenge for cause. The military judge granted defense challenges for cause against two male members of the panel. The trial counsel then peremptorily challenged one of the three women. The appellant used his peremptory challenge against a male. The panel that heard the appellant's case consisted of five members, two of whom were women.

Women currently comprise 17.3 percent of the officer corps in the Air Force. Air Force Personnel Center, *Personnel Statistics Website* <http://www.afpc.randolph.af.mil/demographics/demograf/MSCPER.html> (last updated 30 April 2001). In this case, females constituted 33.33 percent (3 of 9) of the members detailed to the court-martial. After the challenges for cause, females constituted 42.9 percent (3 of 7) of the panel. As finally constituted, 40 percent of the panel were women. There was a greater proportion of women on the final court panel than in the officer corps of the Air Force and as originally detailed by the convening authority. Even if we compare the final panel with the panel after challenges for cause, we find no appreciable difference in the percentage of women. Under such circumstances, we find the *Moore* per se rule inapplicable. *See Ruiz*, 49 M.J. at 344 n. 2. The appellant had the burden to establish a prima facie case of discrimination and the burden of proving purposeful discrimination; he failed to meet either burden. There was no evidence of purposeful discrimination in the use of the peremptory challenge.

## C. Cumulative Errors by Legal Officers

Having concluded that no errors occurred in the selection of court members either before or during trial, we need not address the appellant's contention that cumulative errors in the process deprived him of a fair trial.

## III. Factual and Legal Sufficiency

Article 66(c), UCMJ, 10 U.S.C. § 866(c), requires that we approve only those findings of guilt that we determine to be correct in both law and fact. The test for legal sufficiency is whether, when the evidence is viewed in the light most favorable to the government, a reasonable fact finder could have found the appellant guilty of all elements of the offense, beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324 (C.M.A.1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Our superior court has determined that the test for factual sufficiency is whether, after weighing the evidence and making allowances for not having observed the witnesses, we are convinced of the appellant's guilt beyond a reasonable doubt. *Turner*, 25 M.J. at 325. *But see United States v. Washington*, 54 M.J. 936, 940 (A.F.Ct.Crim.App. 2001) (noting that Congress intended this Court to apply a preponderance of the evidence standard to the question of factual sufficiency).

The appellant contends that the evidence is insufficient because none of the government witnesses were credible. However, all of the credibility issues about which he now complains were apparent to the court members during trial and to the convening authority during his review. We too have considered each of these issues and find no reason to doubt the accuracy or sufficiency of the find-

ings. Instead, we conclude that a reasonable fact finder could have found the appellant guilty of all elements of each offense, beyond a reasonable doubt. Whether we apply our superior court's standard for factual sufficiency or that intended by Congress, we are satisfied of the appellant's guilt.

### IV. Sentencing Exhibit—Evidence of Civilian Conviction

At an Article 39(a) session to review sentencing exhibits, the trial counsel moved the court to admit a copy of the arrest report in support of appellant's prior civilian conviction for "disturbing the peace—fight." When the trial defense counsel objected, the trial counsel offered to submit the appellant's sworn statement from the investigation of the fight. The trial defense counsel continued to object on the basis that both documents were prejudicial. Nevertheless, the military judge admitted the appellant's statement because she concluded that the members would be "unable to appropriately gauge the seriousness based on the word 'fight' ". The appellant now asserts that the military judge erred by admitting his sworn statement.

■ We review a military judge's decision to admit sentencing evidence for an abuse of discretion. *United States v. Zakaria*, 38 M.J. 280, 283 (C.M.A.1993). "[A] military judge abuses [her] discretion if [her] findings of fact are clearly erroneous or [her] conclusions of law are incorrect." *United States v. Ayala*, 43 M.J. 296, 298 (1995).

■ Rule for Courts–Martial (R.C.M.) 1001(b)(3) authorizes admission of evidence of prior military or civilian convictions. The rule contemplates the admission of documents reflecting the fact of the conviction, including a description of the offense, the sentence, and any action by appellate or reviewing authorities. *United States v. Douglas*, 55 M.J. 563, 566–67 (A.F.Ct.Crim.App. 2001). The appellant's sworn statement regarding the incident that led to his civilian conviction was not admissible under R.C.M. 1001(b)(3).

■ Relevant and reliable evidence not admissible under R.C.M. 1001(b)(3) may be admissible under R.C.M. 1001(b)(2)—Personal data and character of prior service of accused. *United States v. Ariail*, 48 M.J.

285, 287 (1998). R.C.M. 1001(b)(2) provides, as follows:

> Under regulations of the Secretary concerned, the trial counsel may obtain and introduce from the personnel records of the accused evidence of the accused's . . . character of service. Such evidence includes copies of reports reflecting the past military efficiency, conduct, performance, and history of the accused. . . .

The Secretary of the Air Force decided that " 'personnel records of the accused,' as referenced in R.C.M. 1001(b) and (d), includes all those records made or maintained in accordance with Air Force directives that reflect the past military efficiency, conduct, performance, and history of the accused, as well as any evidence of disciplinary actions." Air Force Instruction 51–201, *Administration of Military Justice*, ¶ 8.5.1 (3 Oct 1997). The document in question is a handwritten, sworn statement the appellant made to agents of the Air Force Office of Special Investigations (AFOSI). The statement was relevant, reliable, concerned the appellant's conduct while on active duty, and was made and maintained by the AFOSI in accordance with Air Force directives. The military judge balanced the statement's probative value against the danger of unfair prejudice and deleted the words "aggravated assault" from the title of the statement. Although she performed the balancing in relation to admissibility under R.C.M. 1001(b)(3), we find the issue so closely related to admissibility under R.C.M. 1001(b)(2) as to warrant giving her decision "enormous leeway." *United States v. DiCupe*, 21 M.J. 440, 444 (C.M.A.1986); Stephen A. Saltzburg et al., *Military Rules of Evidence Manual* 490 (4th ed.1984). We cannot say her decision to admit the appellant's sworn statement was either arbitrary or capricious.

### V. Conclusion

The findings are correct in law and fact, and no error prejudicial to the substantial rights of the accused occurred. Accordingly, the findings and sentence are

AFFIRMED.